Tony **ARBONAISE**, Plaintiff,

v.

Casper **WEINBERGER**, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 74–10–C.

United States District Court,
N. D. West Virginia,
Clarksburg Division.

Oct. 16, 1975.

Herschel Rose, Duane Southern, Fairmont, W. Va., for plaintiff.

James F. Companion, Wheeling, W. Va., for defendant.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

This is an action for judicial review of the final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for "black lung" benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq. Jurisdiction is founded on § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates § 205(g) and (h) of the Social Security Act, 42 U.S.C. § 405(g) and (h), by reference.

Plaintiff filed his application for benefits under the Act on April 20, 1971. His claim was initially denied on November 5, 1971. Plaintiff filed a request for reconsideration on January 19, 1972, and his claim was reexamined pursuant to the 1972 amendments to the Act. His claim was again denied on August 7, 1973. Plaintiff made a timely request for a hearing, which was conducted in Clarksburg, West Virginia, on May 13, 1974. The administrative law judge rendered his decision denying plaintiff's claim on August 15, 1974.

Plaintiff then obtained legal counsel, and through his attorney (now deceased) submitted additional medical evidence. The Appeals Council, after considering the entire record, including plaintiff's additional medical evidence, approved the administrative law judge's decision. Thus the administrative law judge's decision became the final decision of the Secretary. This action was instituted on November 18, 1974, and is currently pending on cross-motions for summary judgment. The sole issue for determination by this Court is whether the Secretary's final decision is supported by substantial evidence.

In order to establish entitlement to benefits under the Act, plaintiff must establish that he was coal miner, that he is totally disabled due to pneumoconiosis which arose out of his employment in the Nation's coal mines, and that he has filed a claim for benefits in accordance with the Act and the pertinent regulations. The Secretary's final decision acknowledges that plaintiff was a coal miner and that he has filed a proper application, but denies that plaintiff is totally disabled due to pneumoconiosis which arose out of his coal mine employment.

Plaintiff was born September 19, 1908. He has a seventh grade education and started working in the mines at age 15. He worked as a loader, trackman and on a tipple (above ground) for a total of approximately 16 years between his initial employment and the time he quit working in the mines in 1945. From the latter time until 1967, plaintiff operated a poolroom and owned a small grocery store operated by his wife. He has no dependent children. He was awarded Social Security disability benefits as of February 10, 1970 as the result of arteriosclerotic heart disease.

At the hearing before the administrative law judge, plaintiff and his wife testified. Plaintiff had a lay representative, one Lester Livingston, President of the Black Lung Association. Plaintiff testified as to the dusty con-

ditions in all of the mines in which he worked, including the approximately one year of above-ground work on a tipple. He related that he experiences difficulties in breathing, complaining of shortness of breath and coughing up "phlegm or foam." His coughing was said to be much worse at night than during the day. Plaintiff also testified as to his difficulty in walking any distance and in climbing steps or stairs, and remarked that he was unable to mow his lawn. Mrs. Arbonaise's testimony, though brief, essentially substantiated that of her husband, and included additional information about his difficulty in sleeping and the necessity for him to be propped up in bed with pillows to alleviate coughing episodes.

The medical evidence which was considered in reaching the final administrative decision in this case is, in several respects, conflicting. The medical evidence will be summarized, more or less chronologically, below.

Dr. R. S. Mutch, an internist and allergist, examined plaintiff on May 5, 1970. Ventilatory studies were performed, yielding a first second expiratory volume ($FEV_1$) of 2.0 liters and a maximal voluntary ventilation (MVV or MBC) of 39 liters per minute. Plaintiff's height was listed as 64 inches. A chest x-ray taken on the same date was interpreted by Dr. J. L. Coyner, a Board certified radiologist, who did not report the presence of pneumoconiosis. This x-ray was reread on March 16, 1974 by Dr. John M. Dennis, a Board certified radiologist certified by the National Institute of Occupational Safety and Health (NIOSH) as a reader of coal miners' chest x-rays. Dr. Dennis found the x-ray film to be of excellent quality, and his interpretation of the x-ray was that it was negative for pneumoconiosis. Dr. Mutch's report, dated June 2, 1970, indicated that plaintiff had "no restriction of respiration" and that his "pulmonary function was normal."

On May 12, 1971, Dr. David M. Bressler, a general practitioner who had been treating plaintiff for a little more than one year, examined plaintiff, and his diagnoses were (1) pulmonary emphysema, (2) rheumatoid arthritis, (3) gouty arthritis (4) dermatitis nervosa, (5) marked neurasthenia, and (6) mild diabetes mellitus.

On July 6, 1971, plaintiff was examined by Dr. F. R. Barrera. A pulmonary function test was performed, the results of which were $FEV_1$ of 2.6 liters and MVV of 91.2 liters per minute. Dr. Barrera noted that plaintiff's breath sounds were good, with no rales or rhonchi and no prolongation of expiratory phase. A chest x-ray was read by Dr. Ray A. Harron, a Board certified radiologist, as showing "no acute pulmonary or pleural pathology." This x-ray was reread by Dr. Dennis on March 15, 1974. He reported the film to be of acceptable quality and found no pneumoconiosis.

Another chest x-ray taken on September 17, 1971 (apparently at Dr. Bressler's request) was read by Dr. Harron as negative for pneumoconiosis, but Dr. W. L. Murphy, a NIOSH certified radiologist, found the film to be of unreadable quality.

Dr. J. M. Brown, a general practitioner from Shinnston, West Virginia, reported on January 19, 1972 that plaintiff was suffering from moderate exertional dyspnea (labored breathing), frequent chest infections and a chronic cough. A chest x-ray taken on January 18, 1972 was interpreted by Dr. Brown as showing minimal pneumoconiosis, and the diagnosis included findings of moderate emphysema, moderate chronic bronchitis, and pneumoconiosis class C. This film was determined to be of unreadable quality by Dr. J. C. Furnary.

Plaintiff underwent pulmonary function studies at United Hospital Center, Clarksburg, West Virginia, on January 24, 1973. The $FEV_1$ was 2.94 liters, and the MVV was 93.2 liters per minute. It was noted that plaintiff cooperated well in these tests.

On May 8, 1973, plaintiff had another chest x-ray, which was again read by

Dr. Harron, and his report was essentially identical to the earlier x-rays he had interpreted.

There are two letters from Dr. Brown in the file, one dated August 29, 1973, the other dated September 20, 1973. There is some confusion about these letters, which are for all practical purposes identical except for the date and the number of years which plaintiff is said to have worked in the mines. The latter was apparently intended to be a correction of the former (Tr. p. 25). In any event, Dr. Brown's letters refer to plaintiff as having "abdominal type breathing, hyperresonant to percussion, many bronchitis and moist sibolent (sic) rales throughout the lung field." The letters also report that "x-ray shows cardiomelagua (sic) elevation of diaphragm, many areas of pneumoconiosis 2MM to 5MM well defined. Emphysema and bronchitis moderate. This patent class 3/6." Dr. Brown concludes by expressing his opinion that the respiratory changes noted were caused by breathing high dust content in the period plaintiff worked in the mines. There is no indication whether the x-ray referred to in these letters was taken at the time of the report or whether the findings were based on the January, 1972 x-ray, but apparently it is the latter as there is no roentgenographic interpretation in the file from either August or September, 1973.

The additional medical evidence submitted by plaintiff after the administrative law judge denied his claim is in the form of a letter from John M. Suess, M.D., of Lost Creek, West Virginia. The letter includes a statement that plaintiff suffers from "marked shortness of breath with changes consistant (sic) with chronic bronchitis and pneumoconiosis." Dr. Suess also reported wheezing (anterior and posterior) throughout both lung fields and a chest x-ray showing pneumoconiosis, classification 0/1.

Pneumoconiosis is defined as a chronic dust disease of the lung arising out of employment in a coal mine, 30 U.S.C. § 902(b), and includes the diseases and conditions designated in 20 C.F.R. § 410.-110(o). Total disability is defined in § 402(f) of the Act, 30 U.S.C. § 902(f), and in the regulations prescribed by the Secretary. See 20 C.F.R. § 410.412 and other regulations referred to therein. The Secretary, pursuant to the mandate of § 411(b) of the Act, 30 U.S.C. § 921(b), has promulgated regulations for determining whether a miner is totally disabled due to pneumoconiosis. Social Security Regulations No. 10, Subpart D, 20 C.F.R. § 410.401 et seq. These regulations, along with the statutory standards and presumptions, establish the alternative tests for entitlement.

The first alternative is under the interim adjudicatory rules set forth in 20 C.F.R. § 410.490. Under these rules, there is a rebuttable presumption of total disability due to pneumoconiosis where (1) an x-ray, biopsy or autopsy establishes the existence of simple pneumoconiosis, or (2) in the case of a coal miner who worked 15 years or more in underground or comparable coal mine employment, ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values equal to or less than those set forth in the table in the regulation.[1]

---

1. This table reads as follows:

| [Height] | Equal to or less than— FEV$_1$ | and MVV |
| --- | --- | --- |
| 67" or less | 2.3 | 92 |
| 68" | 2.4 | 96 |
| 69" | 2.4 | 96 |
| 70" | 2.5 | 100 |
| 71" | 2.6 | 104 |
| 72" | 2.6 | 104 |
| 73" or more; and | 2.7 | 108 |

■ ■ In this case, no lung biopsy was performed. The x-ray reports are conflicting. The May 5, 1970 x-ray was read twice as negative for pneumoconiosis. The same is true of the chest x-ray taken in conjunction with Dr. Barrera's examination in July, 1971. A third chest x-ray taken in September, 1971 was interpreted once as negative for pneumoconiosis, but was found to be unreadable by Dr. Murphy. The x-ray taken and read by Dr. Brown in January, 1972 was interpreted by him as showing pneumoconiosis, Class C, but Dr. Furnary found the x-ray to be unreadable. The x-ray taken by Dr. Suess in September, 1974 was interpreted as showing pneumoconiosis. category 0/1. This classification is not accepted as evidence of pneumoconiosis. 20 C.F.R. § 410.-428(a)(1). In order to qualify for the interim presumption under 20 C.F.R. § 410.490(b)(1)(i), the x-ray (or biopsy or autopsy, which are inapplicable here) must establish the presence of pneumoconiosis, and the Secretary obviously concluded that the totality of the x-ray evidence available here failed to meet this standard. The Secretary is obliged to resolve conflicts in the evidence, and if in doing so, his conclusion is supported by substantial evidence, it must not be disturbed. Substantial evidence has been defined as "more than a scintilla, but less than preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964.) Applying this standard, the Court is of opinion that the Secretary's finding that the x-ray evidence did not establish the presence of pneumoconiosis is supported by substantial evidence.

■ Turning to the second means of qualification under 20 C.F.R. § 410.490 (b)(1)(ii), the evidence is once again in conflict. Plaintiff underwent pulmonary function studies three times, and in each instance, his height was listed as under 67 inches. Therefore, plaintiff would qualify for the interim presumption if his $FEV_1$ was 2.3 liters or less and his MVV was 92 or less (see n. 1, supra). The May 5, 1970 tests yielded an $FEV_1$ of 2.0 liters and an MVV of 39 liters per minute. The July 6, 1971 figures were $FEV_1$ of 2.6 liters and MVV of 91.2 liters per minute. The final pulmonary function test results of January 24, 1973 were $FEV_1$ of 2.94 liters and MVV of 93.2 liters per minute.

Dr. Herbert Goldstone, a Board certified internal medicine specialist, reviewed the pulmonary function studies. His report (Tr. 94) indicates that the May 5, 1970 test was unsatisfactory because effort and/or cooperation was less than optimal and the paper drive was not moving at the start of expiratory effort. Dr. Goldstone's basis for the former conclusion is not apparent from the record, as the results of the test (Tr. 68) include no statement about plaintiff's cooperation. His determination that the paper drive was not moving at the start of the expiratory effort must either be disregarded or accepted on blind faith, as there is no explanation of the basis upon which this determination was made.

Dr. Goldstone also found the July 6, 1971 pulmonary function test unsatisfactory because there is no spirogram in the file. 20 C.F.R. § 410.430 sets forth the requirements for ventilatory studies, and requires that " . . . three appropriately labeled spirometric tracings . . . must be incorporated in the file." [2]

2. This regulation provides in its entirety:
   § 410.430 Ventilatory studies.
   Spirometric tests to measure ventilatory function must be expressed in liters or liters per minute. The reported maximum voluntary ventilation (MVV) or maximum breathing capacity (MBC) and 1-second forced expiratory volume ($FEV_1$) should represent the largest of at least three attempts. The MVV or the MBC reported should represent the observed value and should not be calculated from $FEV_1$. The three appropriately labeled spirometric tracings, showing distance per second on the abscissa and the distance per liter on the ordinate, must be incorporated in the file. The paper speed to record the $FEV_1$ should be at least 20 millimeters (mm.) per second. The height of the individual must

Even if Dr. Goldstone's conclusion that plaintiff's cooperation was less than optimal in the first test is disregarded, and if the results of the second test were accepted despite the absence of a spirogram in the file, the discrepancy between the values in the first test and the latter two tests, particularly the latter, are significant. The Court, observing the standard set forth in *Thomas v. Celebrezze, supra,* is of opinion that the Secretary's determination that the interim presumption under the provisions of 20 C.F.R. § 490.410(b)(1)(ii) and 30 U.S.C. § 921 (c)(4) does not arise is supported by substantial evidence. In reaching this conclusion, the Court has considered plaintiff's argument that he has presented evidence *demonstrating* the existence of totally disabling pneumoconiosis thereby entitling him to the interim presumption and shifting the burden to the Secretary to rebut the presumption. The Court believes that plaintiff seeks to impose upon the Secretary a burden greater than the law requires. Judge Boreman, speaking for the Court in *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir. 1972), quoted that Court's earlier definition of "substantial evidence" in *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966):

" . . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

As has been indicated, the Court believes that upon the record as a whole, there is substantial evidence to support the Secretary's finding that plaintiff here does not qualify for the interim presumption under the interim adjudicatory rules.

■ The failure of a miner to qualify under the interim presumption in 20 C.F.R. § 410.490(b) does not prevent him from establishing his eligibility under the permanent rules. 20 C.F.R. § 410.-490(e).

■ The first alternative for establishing entitlement under the permanent rules is that set forth in 20 C.F.R. § 410.418, which is an almost verbatim adoption of § 411(c)(3) of the Act, 30 U.S.C. § 921(c)(3). This is a strict test which requires the demonstration of the existence of complicated pneumoconiosis through x-ray, biopsy or autopsy reports, and creates an irrebuttable presumption of total disability due to the disease. Where, as here, the weight of the evidence fails to establish the presence of even simple pneumoconiosis, the statutory irrebuttable presumption based upon evidence of complicated pneumoconiosis will not arise.

The next alternative to entitlement is found in 20 C.F.R. § 410.422, which provides that a determination of total disability due to pneumoconiosis is made in accordance with this section when the provisions of § 410.418 do not apply, or when the miner has a chronic respiratory or pulmonary impairment for purposes of § 410.414(b). Under § 410.422, whether or not pneumoconiosis in a particular case renders a miner totally disabled is determined from all the facts of the case, but primary consideration is given to the medical severity of the pneumoconiosis, § 410.424, and also consideration is given to the miner's age, education, and work experience, § 410.-426.

20 C.F.R. § 410.424 provides that medical considerations alone shall justify

be recorded. Studies should not be performed during or soon after an acute respiratory illness. If wheezing is present on auscultation of the chest, studies must be performed following administration of nebulized bronchodilator unless use of the later is contraindicated. A statement shall be made as to the individual's ability to understand the directions, and cooperate in performing the tests. If the tests cannot be completed the reason for such failure should be explained.

a finding that a miner is totally disabled when his impairment is listed in the Appendix to Subpart D—Total Disability or Death Due to Pneumoconiosis,[3] or is one that is equivalent to a listing therein, and the impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. Clearly, such listings, which involve severe lung and heart conditions or great restriction in the oxygen transfer ability of the lungs, are not present here.

20 C.F.R. § 410.426 provides that where a plaintiff's pneumoconiosis neither constitutes a listing nor the equivalent thereof, he shall nevertheless be found disabled if the pneumoconiosis prevents the miner not only from engaging in his previous coal mine work, but also, considering his age, education, and work experience, precludes him from engaging in any other kind of comparable and gainful work available to him in the immediate area of his residence. In conjunction with this section there are set out certain medical criteria which, if met, will qualify plaintiff to a finding of total disability due to pneumoconiosis. First, there is a table of ventilatory function study values which must not be exceeded by actual test results for a finding of total disability due to pneumoconiosis to be made.[4] In order to establish total disability in accordance with the table in this section, for an individual of plaintiff's height (64 inches), the studies would have to yield an $FEV_1$ of 1.6 liters or less *and* an MVV of 59 liters per minute or less. Plaintiff's pulmonary function studies resulted in values in excess of those set forth above, so the

---

3. "A miner with pneumoconiosis who meets or met one of the following sets of medical specifications, may be found to be totally disabled due to pneumoconiosis at the pertinent time, in the absence of evidence rebutting such finding:

(1) Arterial oxygen tension at rest (sitting or standing) or during exercise and simultaneously determined arterial $p^{co2}$ equal to, or less than the values specified in the following table:

| Arterial $p^{co2}$ (mm.Hg) | Arterial $p^o$ equal to or less than (mm.Hg) |
| --- | --- |
| 30 or below | 65 |
| 31 | 64 |
| 32 | 63 |
| 33 | 62 |
| 34 | 61 |
| 35 | 60 |
| 36 | 59 |
| 37 | 58 |
| 38 | 57 |
| 39 | 56 |
| 40 or above | 55 |

or

(2) Cor pulmonale with right-sided congestive failure as evidenced by peripheral edema and liver enlargement, with:

(A) Right ventricular enlargement or outflow tract prominence on x-ray or fluoroscopy; or

(B) ECG showing QRS duration less than 0.12 second and R of 5 mm. or more in $V_1$ and R/S of 1.0 or more in $V_1$ and transition zone (decreasing R/S left of $V_1$; or

(3) Congestive heart failure with signs of vascular congestion such as hepatomegaly or peripheral or pulmonary edema, with

(A) Cardio-thoracic ratio of 55 percent or greater, or equivalent enlargement of the transverse diameter of the heart, as shown on teleroentgenogram (6 foot film); or

(B) Extension of the cardiac shadow (left ventricle) to the vertebral column on lateral chest roentgenogram and total of S in $V_1$ or $V_2$ and R in $V_5$ or $V_6$ of 35 mm. or more on ECG.

4.

| Height (inches) | MVV (MBC) equal to or less than L./Min. | $FEV_1$ equal to or less than L. |
| --- | --- | --- |
| 57 or less | 52 | 1.4 |
| 58 | 53 | 1.4 |
| 59 | 54 | 1.4 |
| 60 | 55 | 1.5 |
| 61 | 56 | 1.5 |
| 62 | 57 | 1.5 |
| 63 | 58 | 1.5 |
| 64 | 59 | 1.6 |
| 65 | 60 | 1.6 |
| 66 | 61 | 1.6 |
| 67 | 62 | 1.7 |
| 68 | 63 | 1.7 |
| 69 | 64 | 1.8 |
| 70 | 65 | 1.8 |
| 71 | 66 | 1.8 |
| 72 | 67 | 1.9 |
| 73 or more | 68 | 1.9 |

presumption of total disability does not arise under this criterion.

The second criterion involves physical performance testing, and since no testing was performed, is not applicable.

The third and final criterion provides that where other relevant evidence establishes that the miner has a chronic respiratory or pulmonary impairment, he will be found totally disabled if such impairment prevents him not only from doing his previous coal mine work, but also, considering his age, education, and work experience, prevents him from engaging in comparable and gainful work. If total disability is found to exist under this standard, and if the miner has worked many years (although less than 15) in underground or comparable coal mine employment, a presumption will arise that the impairment involved is pneumoconiosis.

The "other relevant evidence" that may be considered under this criterion is set forth in 20 C.F.R. § 410.414(c), and includes, in addition to clinical medical evidence ". . . any medical history, evidence submitted by the miner's physician, his spouse's affidavits, . . . and other supportive materials."

 Although there is subjective evidence (plaintiff's testimony and that of his wife) of some respiratory or pulmonary impairment, and the statements of Dr. Brown and Dr. Suess indicate the presence of moderate chronic bronchitis and emphysema, the Court is of opinion that the Secretary's conclusion that this evidence failed to establish the existence of a chronic impairment of the severity required to satisfy the standard prescribed in this regulation meets the muster of the substantial evidence requirement.

20 C.F.R. § 410.470 provides that findings of disability by other governmental or non-governmental agencies are not determinative of disability under the Act because of differing definitions of disability. The term "other governmental agency" includes the Social Security Administration with respect to a decision relating to entitlement to disability insurance benefits. Under the provisions of 20 C.F.R. § 410.426, a miner may be determined to be totally disabled due to pneumoconiosis only if that disease is the primary reason for his inability to engage in comparable gainful work. Medical impairments other than pneumoconiosis may not be considered. Id. Thus, plaintiff's disability based on arteriosclerotic heart disease does not affect the determination of his eligibility for benefits under the Act.

Having determined, for the reasons stated herein, that the Secretary's final decision denying plaintiff's claim for "black lung" benefits under the Act is supported by substantial evidence, it is

Ordered that plaintiff's motion for summary judgment be, and the same is hereby denied; that defendant's cross-motion for summary judgment be, and the same is hereby granted; and that this action be dismissed and retired from the docket.