577 F.2d 356
 Harold GASTINEAU, Plaintiff-Appellant,
v.
Forrest David MATHEWS, Secretary of Health, Education, and
Welfare, Defendant-Appellee.
 No. 76-1809.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 3, 1978.
Decided May 23, 1978.
 
 Alva A. Hollon, Jr., Hollon, Hollon & Hollon, Hazard, Ky., for plaintiff-appellant.
 Eldon L. Webb, U. S. Atty., Richard E. Duerr, Jr., William M. Brown, Asst. U. S. Attys., Lexington, Ky., for defendant-appellee.
 Before WEICK, EDWARDS and MERRITT, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 Plaintiff Gastineau has appealed from an order of the District Court affirming the denial by the Secretary of Health, Education and Welfare of his claim for black lung benefits. For the reasons stated below, we affirm the judgment of the District Court.
 
 
 2
 Plaintiff was born on May 13, 1910, and has a sixth grade education. He worked in the nation's underground coal mines for forty-two years. The cause of his retirement from mining in 1970 was a severe back injury which he received in an accident on the job. On account of this back injury, he and his wife had been receiving Social Security total disability benefits since 1970, under the Social Security Act, 42 U.S.C. §§ 423, 402(b), and Gastineau individually has also been receiving Workmen's Compensation benefits since 1971.
 
 
 3
 In 1970 plaintiff also filed applications for black lung benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 et seq. His claim was denied initially and was again denied after the review required by the 1972 amendments to the Act, 30 U.S.C. § 941. He requested a hearing, which was granted, and an Administrative Law Judge determined, apparently on the basis of positive X-rays, that Gastineau was entitled to black lung benefits. On its own motion, the Appeals Council submitted Gastineau's X-rays to Dr. W. P. Montgomery, a Diplomate in Internal Medicine and a consulting certified reader, who reread the X-rays as negative for pneumoconiosis. On this basis, the Appeals Council reversed the decision of the ALJ.
 
 
 4
 In seeking review in the District Court, 30 U.S.C. § 923(b), incorporating 42 U.S.C. § 405(g), Gastineau claimed, first, that he was entitled to an irrebuttable presumption of disability under 30 U.S.C. § 921(c)(3),[1] and second, that he was entitled to a rebuttable presumption of disability under 30 U.S.C. § 921(c)(4).[2] The District Court granted the Secretary's motion for summary judgment from which judgment Gastineau now appeals to this Court.
 
 
 5
 Plaintiff Gastineau's primary argument on appeal is that he was entitled to the rebuttable presumption of 30 U.S.C. § 921(c)(4), which provides that (1) if a miner has been employed for fifteen years or more in the nation's underground coal mines, and (2) if the X-rays submitted in connection with his claim have been read as negative, but (3) "if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment," then there is a rebuttable presumption that the miner is totally disabled by pneumoconiosis.[3]
 
 
 6
 It is undisputed that plaintiff satisfies the first two elements of the presumption.
 
 
 7
 First, he was employed underground for forty-two years. Second, all of the X-rays submitted by Gastineau were reread as negative by Dr. W. P. Montgomery, a certified reader and consultant to the Bureau of Hearings and Appeals. On the basis of this negative X-ray evidence, Gastineau's application under 30 U.S.C. § 921(c)(3) was properly denied. It is not the function of this Court to resolve conflicts in the medical evidence, but rather it is the function of the Secretary, whose expertise is given great deference. E. g., Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976).
 
 
 8
 A substantial question exists however, whether "other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment," the third criterion of § 921(c)(4). The regulation implementing this section, 20 C.F.R. § 410.414(b)(1), incorporates by reference § 410.422(b) and § 410.426(a), which require that in order to be within the scope of the Act, a chronic respiratory or pulmonary impairment must be shown by the claimant to be the primary cause of the claimant's total disability.[4] See Ansel v. Weinberger, 529 F.2d 304, 308-09 (6th Cir. 1976); Cope v. Mathews, 415 F.Supp. 467, 469 (E.D.Tenn.1976); Arbonaise v. Weinberger, 401 F.Supp. 983, 990 (N.D.W.Va.1975); Baker v. Secretary of HEW, 383 F.Supp. 1095, 1100-01 (W.D.Va.1974). Cf. Koski v. Weinberger, 401 F.Supp. 990, 994 (N.D.W.Va.1975).
 
 
 9
 This burden has not been carried by plaintiff in the present case. Plaintiff has not shown the existence of a totally disabling chronic respiratory or pulmonary impairment, lacking both (A) medical evidence of the existence of such impairment, § 410.424, and (B) medical evidence with respect to the requirement that the impairment be the primary cause of the disability, § 410.426.
 
 
 10
 * First, the physical examinations performed on August 3, 1973 by Dr. Allen and on January 13, 1974 by Dr. Odom, both found plaintiff's lungs "clear to ascultation and percussion." Neither found cyanosis or clubbing or any other significant impairment. Dr. Odom's pulmonary function study showed only a "mild" impairment, and the result of the study by Dr. Van Lith on July 30, 1972, was "normal."
 
 
 11
 We note that Dr. Odom did state that plaintiff was "totally and permanently disabled for coal mining and work in a dusty environment." This statement however, was based at least in part on X-rays that were later reread as negative. Dr. Clarke on December 10, 1973, and Dr. Martin on November 7, 1973, also found total disability on the basis of X-rays later reread as negative; and Dr. Clarke's pulmonary function studies were rejected as not meeting the standards of 20 C.F.R. § 410.430. Furthermore, such statements by physicians are not determinative of the ultimate question whether plaintiff is disabled, the decision of which is the function and responsibility of the Secretary. 20 C.F.R. § 410.471.
 
 
 12
 We also note the lay testimony of plaintiff and his wife that Gastineau has a serious breathing problem which interferes with his sleep and has curtailed his physical activities. Further, we note Gastineau's testimony that his breathing problems had begun to interfere with his mining work as early as a year before his back injury forced him to leave the mines.
 
 
 13
 This lay evidence, coupled with the "mild" impairment found by Dr. Odom, and the diagnosis by Dr. Snyder dated January 24, 1973, of "chronic bronchitis," might together establish a compensable impairment were it not for the substantial contrary medical evidence credited by the Secretary. The Appeals Council found:
 
 
 14
 The credible evidence, including X-ray interpretations, pulmonary function study results and other relevant evidence of record, does not demonstrate significantly impaired lung function as a result of chronic respiratory or pulmonary condition.
 
 
 15
 We hold that this finding was supported by substantial evidence on the record.
 
 B
 
 16
 Second, plaintiff has not carried his burden under §§ 410.414(b)(1) and 410.426(a) of proving that his respiratory impairment was "totally disabling" in the sense that it was the primary cause of his total disability. Gastineau's departure from the mines was the result of an injury to his back incurred in a mining accident, causing a herniated lumbar disc which required surgery. He did not leave the mines because of any black lung ailment. At the time of the hearing of this case, plaintiff and his wife were receiving a total of $505.30 per month in Social Security and Workmen's Compensation disability benefits for this injury. In his Application for Benefits Under The Federal Coal Mine Health and Safety Act of 1969, Gastineau described his disability as "back injury disc problems" and indicated that he was at that time receiving Social Security Disability benefits. Since that time he has also been receiving Workmen's Compensation benefits. The record is not clear whether those benefits of $505.30 monthly have been increased.
 
 
 17
 Although a finding of a disability by another agency is not determinative, 20 C.F.R. § 410.470, it can nevertheless lend some support to the Secretary's determination. Cope v. Mathews, supra at 470 n. 2.[5]
 
 
 18
 A determination of whether a miner is totally disabled should be made from all of the facts of the case. 20 C.F.R. § 410.422(c). Considering the fact that the evidence was in conflict with respect to whether the plaintiff was totally disabled within the meaning of the Act, from any black lung ailment, and considering the strong evidence that plaintiff was totally disabled by his back injuries, we affirm the finding of the District Court that the evidence "adequately supports the Appeals Council's implicit conclusion that the primary reason for plaintiff's (disability) is not his lung condition," and its conclusion that therefore, plaintiff Gastineau has not demonstrated the existence of a totally disabling condition within the scope of 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.426(a). We do not know how a claimant can be totally and permanently disabled more than once.
 
 
 19
 For these reasons, the judgment of the District Court is affirmed.
 
 
 20
 EDWARDS, Circuit Judge, dissenting.
 
 
 21
 Appellant in this instance had worked 42 years in the mines before 1970 when he left the job because of a back injury. He is now 67 years old. He is receiving Social Security disability benefits based on a back injury. Nonetheless, the black lung statute does not exclude benefits for one who is receiving other types of assistance.
 
 
 22
 In this case there was sufficient evidence at the hearing to convince the Administrative Law Judge that he had pneumoconiosis and was entitled to black lung benefits. There was testimony that he had begun to have breathing problems before the back injury which occasioned his leaving the job. Three doctors who examined him and read X-rays diagnosed second stage silicosis; a fourth found chronic bronchitis. Four doctors conducted pulmonary function studies. Two found that his breathing capacity was impaired under HEW regulations. Two found it was not. The two who found impairment conducted their examinations later than the two who found no impairment. After the Administrative Law Judge found total disability and awarded benefits, the Appeals Council asked its own consultant, described to us as a Board certified X-ray reader, to review the X-rays relied upon by the three doctors below. Reporting on the same X-rays, this reader found that two showed no pneumoconiosis and held that the third X-ray was not readable.
 
 
 23
 Appellant contends that he is entitled to an irrebuttable presumption because there was evidence presented by him in this record that he had complicated pneumoconiosis. He argues that that fact alone, disregarding all other evidence to the contrary, requires the application of the irrebuttable presumption and, hence, the award of benefits. (See 30 U.S.C. § 921(c)(3) (Supp. V 1975).
 
 
 24
 I find no need to pass on the question of whether the statute should be given this reading (although as it is written, it is amenable to appellant's construction). On the facts in this record and this court's holding in Ansel v. Weinberger, 529 F.2d 304 (6th Cir. 1976), appellant is entitled to a rebuttable presumption, based on 15 years of work in the coal mines (appellant had 42), that he had pneumoconiosis and that he was totally disabled thereby. See 30 U.S.C. § 921(c)(4) (Supp. V 1975).
 
 In the Ansel case we held:
 
 25
 The court further concludes that there is no substantial basis for the finding that Claude Ansel did not establish that he was totally disabled within the definition of the Black Lung Act. His treating physician stated unequivocally that Ansel was totally disabled for work in a coal mine. No other medical witness contradicted this statement, and the lay testimony supported Dr. Bope's opinion. The witness Otto White testified that he began working in the mines with Claude Ansel in 1933 and that Ansel was one of the best workers. Mr. White had continued to see Ansel "a couple of times a month" after they left the mine. He testified that even while walking downhill it was necessary for Mr. Ansel to stop and rest after 50 feet or so, and that his condition had gotten "a lot worse" in the last five years. The administrative law judge received this testimony as competent "other evidence" and considered it along with the medical evidence and the testimony of Mr. and Mrs. Ansel. He did not construe amended 30 U.S.C. § 923(b) as permitting lay testimony of persons other than the miner's wife only in cases where the miner is deceased. This is a reasonable construction. Since disability of a living miner may not be established by the wife's testimony alone under Section 921(c)(4), other lay evidence must have been contemplated.
 
 
 26
 There is no evidence in the record from which it could be concluded that at the time of his hearing Claude Ansel could engage " . . . in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f). Though fluoroscopy disclosed an early stage of silicosis, a condition included within the definition of pneumoconiosis in 20 C.F.R. § 410.110(o ), the applicant's chest X-rays were interpreted as negative with respect to the requirements of 30 U.S.C. § 921(c)(3) for an irrebuttable presumption of pneumoconiosis. Thus he relied on the rebuttable presumption of Section 921(c) (4). Giving primary consideration to the medical evidence and considering the lay testimony concerning the limitations on Mr. Ansel's physical activities, all in light of Ansel's age, education and work experience, we hold that this record "demonstrates the existence of a totally disabling respiratory or pulmonary impairment. . . . " Section 921(c)(4). Since the Act provides that when these conditions are met "there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis . . . " Id., the contrary finding of the administrative law judge affirmed by the district court was clearly erroneous unless the Secretary may be held to have rebutted the presumption.
 
 
 27
 The Secretary contends that the presumption was rebutted by evidence which established that Claude Ansel did not have pneumoconiosis. He relies on the negative findings of three radiologists who examined X-rays and the pulmonary studies. It is obvious that the negative X-rays may not be relied upon to rebut the presumption of Section 921(c)(4). If he had been able to produce a positive X-ray, there would have been no need to invoke the presumption. The very existence of a negative X-ray is a prerequisite to reliance upon the presumption of pneumoconiosis as established by other evidence. Furthermore, under the 1972 amendment, negative X-ray evidence may not be the sole basis for a denial of benefits. 30 U.S.C. § 923(b). Nor do we believe the presumption of Section 921(c)(4) can be rebutted by showing that pneumoconiosis was not established by pulmonary function studies. The regulation which establishes the levels required for a finding of disabling pneumoconiosis on the basis of a ventilatory study does not purport to provide proof of the nonexistence of pneumoconiosis. Once Claude Ansel produced evidence which entitled him to the presumption of Section 921(c)(4), that presumption could be rebutted only by establishing that he did not have pneumoconiosis, there being no contention that his impairment did not arise out of employment in the mines. In view of the unequivocal testimony of Dr. Bope, it appears that the Secretary would have been required at least to produce a medical opinion that Mr. Ansel did not have pneumoconiosis in order to rebut the presumption. No such testimony appears in this record. See Whitson v. Finch, 437 F.2d 728, 732 (6th Cir. 1971).
 
 
 28
 Ansel v. Weinberger, supra at 309-10.
 
 
 29
 What was said in Ansel is dispositive of this case and requires our reversal of the District Court and remand for award of benefits. I would vacate the judgment and remand to the District Court for remand to the Secretary to award benefits.
 
 
 
 [1]
 30 U.S.C. § 921(c)(3) provides:
 (3) if a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be. . . .
 This section is implemented by 20 C.F.R. § 410.414(a).
 
 
 [2]
 30 U.S.C. § 921(c)(4) provides:
 (4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) is respiratory or pulmonary impairment did not arise out of, or in connection with employment in a coal mine.
 This section is implemented by 20 C.F.R. §§ 410.414(b)(1), (2), (3).
 
 
 [3]
 The Secretary can rebut this presumption only by establishing (A) that the miner does not have pneumoconiosis, or (B) that the respiratory impairment did not arise out of coal mining employment. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 410.414(b)(2)
 The Appeals Council made the following findings:
 
 
 [4]
 The X-ray interpretations do not establish that the claimant has pneumoconiosis
 
 
 [5]
 The pulmonary function studies establish values which exceed all regulatory criteria for establishing an impaired ventilatory capacity
 
 
 [6]
 The credible evidence, including X-ray interpretations, pulmonary function study results and other relevant evidence of record, does not demonstrate significantly impaired lung function as a result of chronic respiratory or pulmonary condition
 
 
 [7]
 The preponderance of the medical and other relevant evidence does not demonstrate that the claimant is totally disabled as a result of pneumoconiosis. Neither does such evidence demonstrate a totally disabling chronic respiratory or pulmonary impairment which could give rise to the presumption of total disability due to pneumoconiosis
 DECISION
 It is the decision of the Appeals Council that, based on his application filed on April 14, 1970, the claimant is not entitled to black lung benefits based on total disability under title IV, section 411 (30 USC § 921) of the Federal Coal Mine Health and Safety Act of 1969, as amended. The decision of the administrative law judge is reversed.
 We hold that these findings are supported by substantial evidence and that the statutory presumption, if it had been raised, would therefore have been rebutted. See Prokes v. Mathews, 559 F.2d 1057, 1060-61 (6th Cir. 1977); Ansel v. Weinberger, 529 F.2d 304, 309-10 (6th Cir. 1976); Pike v. Mathews, 414 F.Supp. 848, 851 (E.D.Tenn.1976).
 
 
 [4]
 20 C.F.R. § 410.426(a) provides, in part:(a) . . . A miner shall be determined to be under a disability only if his pneumoconiosis is (or was) the primary reason for his inability to engage in . . . comparable and gainful work. Medical impairments other than pneumoconiosis may not be considered. (Emphasis added.)
 Of similar import is § 410.422(b), also incorporated by reference in § 410.414(b)(1), which provides, in part:
 (b) A determination of total disability may not be made for purposes of this part unless pneumoconiosis is (or is presumed to be) the impairment involved.
 
 
 [5]
 Under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), the term "disability" means:
 (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ..
 For purposes of paragraph (1)(A), it is provided in 42 U.S.C. § 423(d)(2)(A):
 (A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .. (Emphasis added.)
 The requirements of the Social Security Act are considerably more stringent than those of the Black Lung Benefits Act of 1972 which expressly requires that the Secretary's regulations "shall not provide more restrictive criteria than those applicable under Section 423(d) of Title 42." 30 U.S.C. § 902(f). The Act itself requires only that
 (S)uch regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged . . .. (Emphasis added.)
 30 U.S.C. § 902(f). The regulation implementing this statute is 20 C.F.R. § 410.412(a).