**John B. SHRADER, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

No. 78–1898.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1979.

Decided Oct. 18, 1979.

Deborah Garton Gibson, Bluefield, W. Va. (Hensley, Muth & Gibson, Bluefield, W. Va., on brief), for appellant.

James S. Arnold, Asst. U.S. Atty., Charleston, W. Va. (Robert B. King, U.S. Atty., Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

■ John B. Shrader [claimant] appeals from a final order of the district court affirming the decision of the Secretary of Health, Education and Welfare that he was not entitled to black lung benefits sought pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* [the Act]. Our scope of review is confined to determining whether the Secretary's decision was supported by substantial evidence. If such support exists, we must affirm; if not, we must reverse. 30 U.S.C. § 923(b), *incorporating by reference* § 205(b) of the Social Security Act, 42 U.S.C. § 405(b). *See Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1968). In this case we conclude that the Secretary failed to give proper consideration to certain evidence and to explain key findings on the record, and we must remand for further consideration. *Arnold v. Secretary of H. E. W.,* 567 F.2d 258 (4th Cir. 1977).

## I.

Claimant was 46 years old at the time of the administrative hearing and had completed five years of formal education. He testified that he had worked in various mines on a regular basis from 1947 to 1958, and for four or five additional weeks in 1961.[1] Claimant was able to provide the names of his employers and reconstruct the approximate dates of employment with each. As further evidence, he submitted his social security earnings records which showed 37 quarters of coal mine employment.

The administrative law judge [ALJ] noted at the hearing that, based on the earnings record and claimant's testimony, more than ten years of coal mine employment had been established. However, he reversed himself without explanation in his hearing decision, finding that only eight years had been proved. See pp. 117–118 and n. 3, *infra.*

Claimant submitted four positive X-rays, each of which was re-read a number of times. Nine readers diagnosed pneumoconiosis; seven read the X-rays as negative for pneumoconiosis; and eight considered the X-rays to be unreadable.

Claimant also submitted three pulmonary function studies. The first, performed on January 19, 1971 by Dr. Warden, showed $FEV_1$ and MVV values equal to or lower than those values which, under 20 C.F.R. § 410.490(b)(1)(ii), raise a presumption of total disability due to pneumoconiosis. Dr. Warden noted that claimant's cooperation during the test was good. The Secretary had the test results re-evaluated by a consultant, Dr. Dugan, who found the results unsatisfactory because the $FEV_1$ was "taken at too slow a speed." The second test was performed on April 3, 1972 by Dr. Daniel, and showed values exceeding the regulatory listings. However, Dr. Daniel noted that claimant's cooperation during the test was poor. The final study was performed on June 28, 1974 by Dr. Clarke, and showed $FEV_1$ and MVV values equal to or lower than the regulatory listings. Dr. Clarke noted good cooperation on claimant's part.

Finally, claimant submitted a physician's report from two physical examinations. Dr. Higginbotham noted on March 21, 1973 that claimant had hypertension and swelling in his hands, legs and abdomen. He expanded his diagnosis on June 29, 1973, reporting that claimant had hypertensive heart disease and pneumoconiosis. Pneumoconiosis was diagnosed by history.

---

1. Claimant reconstructed his work history from memory, as his personal records had been destroyed in a house fire.

At the hearing, claimant and his wife testified as to his breathing difficulties. Claimant testified that he had passed out in the mines and had to be "hauled out." He suffers from chest pains and shortness of breath. He has difficulty sleeping and props himself up on pillows. During the day claimant suffers from a "smothering" sensation. He cannot walk more than 20–30 feet without becoming short of breath, and he avoids climbing steps or walking uphill. Claimant's wife corroborated his testimony and added that, due to her husband's breathing difficulties, she must assist him in such tasks as washing his face. Even when Mrs. Shrader is in another room, she can hear her husband trying to breathe; he makes "a funny noise trying to get his breath."

## II.

The ALJ's opinion denying benefits was brief. He first held without explanation that claimant had only established "in excess of eight years" of coal mine employment, and was therefore not entitled to the presumptions built into the black lung regulations which are triggered by 10 years of such employment. 20 C.F.R. §§ 410.-490(b)(3); 410.416(a). Noting that the four X-rays had all been re-read as negative, he concluded that pneumoconiosis had not been established by a preponderance of the X-ray evidence. Finally, he held that the other medical evidence did not establish a totally disabling chronic respiratory impairment.

The Appeals Council affirmed, noting without elaboration that less than 10 years of coal mine employment had been established and that the X-ray evidence as supplemented on appeal did not show pneumoconiosis. Claimant had submitted a fifth X-ray which was read as positive by two "B" readers and negative by another "B" reader. With 27 readings in the record—11 positive, 8 negative and 8 unreadable—the

Council yet held that the X-ray evidence was insufficient.

The Council discussed the pulmonary function studies at some length. Dr. Warden's study was held to be invalid, based on Dr. Dugan's opinion that the $FEV_1$ was taken at too slow a speed. The Council had Dr. Clarke's study re-evaluated by another consultant, Dr. Ang. Dr. Ang reported that the study was invalid because the $FEV_1$ was improperly calculated and because the tracings did "not show consistent maximum effort." The Council adopted Dr. Ang's opinion and noted that, even if the Clarke study were valid, it had been performed one year after the jurisdictional cutoff date. The test results would not be related back because the intervening test performed by Dr. Daniel demonstrated that there was no serious respiratory impairment on or before July 1, 1973.

## III.

The critical threshold issue in this case is the number of years in which claimant was employed as a miner. Where a claimant is employed for at least ten years in the nation's coal mines, and his ventilatory studies show values equal to or less than the values set forth in the interim table contained in 20 C.F.R. § 410.490(b)(1)(ii), he will be presumed to be totally disabled due to pneumoconiosis. 20 C.F.R. § 410.-490(b)(3) (the "interim criteria").[2]

At the administrative hearing, the ALJ stated:

Yes, the earnings record, I take notice, establishes *with his testimony* 10 and a half years minimum coal mine employment (Tr. 66) (emphasis added)

We are unable to ascertain from the record the ALJ's reason(s) for his later conclusion that only eight years of employment had been proved. Had he misread the earnings record?[3] Did he belatedly determine that

**2.** The Secretary concedes that, if claimant has pneumoconiosis or a totally disabling respiratory impairment, it arose from his coal mine employment. Therefore we need not consider the causal presumption of § 410.416(a), which

is also triggered by proof of ten years mine employment.

**3.** At oral argument on appeal, there was some confusion concerning the use of social security

claimant's testimony was not credible? Did he re-examine the testimony and conclude that claimant's recollections did not sufficiently "fill the gaps" in the earnings record? The opinion of the Appeals Council sheds no light on these questions.

We think claimant is entitled to an explanation on the record of the Secretary's decision and the reasons therefor.

Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

*Arnold v. Secretary of H. E. W.*, 567 F.2d at 259 (citations omitted). Further, if the Secretary determines on remand that ten years of coal mine employment have been proved, claimant is entitled to an award of benefits based on the pulmonary function studies submitted.

 Dr. Warden's studies, dated January 19, 1971, show $FEV_1$ and MVV values equal to or lower than the values set out in 20 C.F.R. § 410.490(b)(1)(ii); the Secretary discounted these results because of Dr. Dugan's opinion that the $FEV_1$ was "taken at too slow a speed." The consultant's opinion appears to be little more than a bald conclusion. Although 20 C.F.R. § 410.430 provides that the speed to record the $FEV_1$ should be at least 20 mm. per second, there is nothing in Dr. Warden's report to indicate that this speed was not utilized in the making of the tracings. *Cf. Arbonaise v. Weinberger*, 401 F.Supp. 983, 987 (N.D.W.Va.1975):

His [the consultant's] determination . . . must either be disregarded or accepted on blind faith, as there is no explanation of the basis upon which this determination was made.

This court, while acknowledging its lack of expertise in reading $FEV_1$ tracings, will not accept Dr. Dugan's unexplained conclusion on blind faith. We think the Secretary erred in doing so.

In similar vein, we think the Secretary erred in discounting the pulmonary function studies submitted by Dr. Clarke on June 28, 1974. The Secretary's consultant, Dr. Ang, considered the studies invalid because the $FEV_1$ was improperly calculated and because the tracings did not show "consistent maximum effort." Yet the doctor's recalculation of the $FEV_1$ showed a value still qualifying under the interim tables! Thus the probative value of his report rises or falls with his notation that claimant did not exert consistent maximum effort—a conclusion which is unexplained and unsupported. *See Jarvis v. Califano*, C/A No. 76–0178–BL (S.D.W.Va.1978).[4]

We think the Secretary erred in discounting the studies performed by Dr. Clarke, which are consistent with and support the earlier studies performed by Dr. Warden. Thus the Secretary's decision that the pulmonary function tests do not satisfy the interim criteria, 20 C.F.R. § 410.490(b)(1)(ii), is unsupported by substantial evidence and cannot be sustained.

earnings records to determine the ten-year employment issue. The social security disability regulations, 20 C.F.R. § 404.103(b)(1), provide that an insured quarter for purposes of determining eligibility for benefits is one in which an individual earned $50.00 or more. We think this an appropriate yardstick for determining quarters which will be fully credited to a black lung claimant in determining the duration of his coal mine employment.

The earnings record in this case shows 37 quarters of coal mine employment in which claimant earned $50.00 or more in the mines. Accordingly, on remand the Secretary should determine whether claimant's testimony, along with any additional evidence he may submit on the issue, demonstrates at least three more quarters of employment. *See Maxey v. Califano*, 598 F.2d 874 (4th Cir. 1979).

4. We do not adopt a rule that the Secretary's consultants may not discount the findings of an examining physician. Such a holding would appear to be foreclosed by the Supreme Court's decision in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In this case, however, the conclusions of the consultants Dr. Dugan and Dr. Un Hun Ang were unexplained and unsupported by the record; as we noted in a similar context, "A bald conclusion, unsupported by reasoning and evidence, is generally of no use to a reviewing court." *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978).

In view of our holding with respect to the pulmonary function tests, we find it unnecessary to consider the X-ray evidence. We do note, however, that eleven positive X-ray readings might be considered good evidence of the existence of pneumoconiosis, where the evidence is evaluated in light of Congress' stated intention that the interim provisions of the Act be liberally construed.

The judgment of the district court is reversed, and the case is remanded for further administrative proceedings not inconsistent with this opinion.

*REVERSED AND REMANDED.*