917 F.2d 22
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Edward PROFITT, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 89-1797.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 13, 1990.
Decided Oct. 25, 1990.
 
 On Petition for Review of an Order of the Benefits Review Board. (87-1427-BLA)
 Robert S. Hodgman, Hodgman, Elam, Gordon & Adkins, Greensboro, N.C. for petitioner.
 Robert P. Davis, Solicitor of Labor, Donald S. Shire, Associate Solicitor for Black Lung Benefits, Edward O. Falkowski, Office of the Solicitor, United States Department of Labor, Washington, D.C., for respondent.
 Ben.Rev.Bd.
 REMANDED.
 Before K.K. HALL, PHILLIPS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Edward Profitt's claim for black lung benefits was denied by an administrative law judge (ALJ), whose decision was affirmed by the Benefits Review Board (BRB). In Profitt's petition for review by this court, he contends that errors in the ALJ's denial of his claim require a remand with directions to award him benefits or, alternatively, to reconsider his claim free of the errors he assigns. The Director, Office of Worker's Compensation Programs, United States Department of Labor (Director), concedes errors in various aspects of the ALJ's denial, but contends that the appropriate remedy is a remand for reconsideration free of those errors.
 
 
 2
 We remand for reconsideration on the basis of the Director's specific concessions of error.
 
 
 3
 * Assessing Profitt's claim under the 20 C.F.R. Part 718 regulations applicable to claims filed after March 31, 1980, the ALJ denied it on several grounds. First, he concluded that the x-ray evidence did not establish the existence of pneumoconiosis under Sec. 718.202(a)(1) because the only x-ray in the record that had been read positive was later read negative or found to be unreadable by three B-readers. Second, he noted that none of the presumptions of pneumoconiosis provided in .202(a)(2) (biopsy) or .202(a)(3) (ventilatory and blood gas studies) applied. Finally, he concluded that pneumoconiosis was not established under .202(a)(4) by either of the four physician's medical reports in the record.
 
 
 4
 Specifically, on the last point, the ALJ noted that Dr. Yelton had diagnosed cardiovascular disease in a 1977 examination; that Dr. Pellegrini's diagnosis of significant pulmonary disease from which he inferred pneumoconiosis was too equivocal and lacking in objective supporting evidence; that Dr. Blackwell's report was similarly too uncertain in that it only reported "possible" pneumoconiosis; and that Dr. Nadel's report was insufficient because in making his diagnosis the doctor had relied on unreadable or non-qualifying test results: a positive x-ray reading which was later refuted by a negative reading by a B-reader, non-qualifying blood gas studies, and a pulmonary function study that was later determined to be invalid. Having thus found pneumoconiosis not established by any of the proffered evidentiary means, the ALJ did not address the additional questions of causation and disability in denying the claim. On appeal, the BRB affirmed, finding no error in the ALJ's dispositive finding that pneumoconiosis had not been established on the evidence of record.
 
 This petition for review followed.[1]
 II
 
 5
 Profitt's attack on the BRB's decision affirming the ALJ's is a limited one. He contends that the ALJ (and the BRB in affirming) erred in rejecting the medical reports of three of the doctors, Pellegrini, Blackwell, and Nadel, as insufficient to establish the existence of pneumoconiosis under .202(a)(4). He argues that the reports of these three, considered separately and cumulatively, compel a determination of the existence of pneumoconiosis (and presumably of total disability caused by coal mine employment) which warrants a reversal and remand for the award of benefits. Alternatively, he contends that the ALJ's errors in assessing these doctors' reports requires a remand for reconsideration of his claim free of the errors identified.
 
 
 6
 As indicated at the outset, the Director, with commendable candor, has conceded here (as he attempted to concede before the BRB) that the ALJ's assessment of two of the reports, those of Drs. Blackwell and Nadel, was so flawed as to require reconsideration of Profitt's claim. The Director's concession does not, however, go past Profitt's entitlement to reconsideration; he does not concede entitlement to benefits on the basis of the present record. As the Director puts it, "although substantial evidence may support a denial of benefits ... the ALJ's consideration of whether Profitt established the existence of pneumoconiosis by the reports of Drs. Nadel and Blackwell was flawed." The proper remedy, contends the Director, is a remand for reconsideration of the evidence by an ALJ; if upon reconsideration the ALJ determines that pneumoconiosis has been established, he must then further address what has not yet been addressed, whether Profitt is totally disabled by the pneumoconiosis, and whether the pneumoconiosis was due to his coal mine employment. See 20 C.F.R. Secs. 718.202, .203, .204.
 
 
 7
 We conclude that the Director's position should control our decision, both in its concessions of error and its proposed remedy. Accordingly, we will vacate the decision of the BRB and remand for reconsideration of Profitt's claim in light of the specific concessions of error made by the Director.
 
 
 8
 For guidance of the ALJ on remand, we summarize the specific errors conceded by the Director upon which we base our decision that reconsideration is required.
 
 
 9
 We first note several errors conceded to have occurred in the rejection of Dr. Nadel's report.
 
 
 10
 The ALJ determined that a later negative reading of an x-ray relied upon by Dr. Nadel undermined his diagnosis of pneumoconiosis. Dr. Nadel had read the x-ray as showing chronic obstructive pulmonary disease and "possible pneumoconiosis." On this basis, he had concluded that Profitt had a coal-mine related chronic obstructive pulmonary disease, and he "suspected" that Profitt also had true "clinical" pneumoconiosis.[2] The Director concedes, and we agree, that later negative reading of the Nadel x-ray by the B-reader which the ALJ thought undermined Dr. Nadel's diagnosis did not do so. The B-reader found no evidence of clinical pneumoconiosis, but did conclude from it that Profitt suffered from a mild chronic pulmonary disease. This later reading did not therefore completely undercut Dr. Nadel's primary diagnosis of "legal" pneumoconiosis, but was in fact consistent with it. While the ALJ did not err in concluding that Dr. Nadel's report did not establish the existence of clinical pneumoconiosis, he did err in concluding that the B-reader's opinion directly undermined Dr. Nadel's diagnosis of "legal" pneumoconiosis.
 
 
 11
 The ALJ also rejected the probative force of Dr. Nadel's report because it relied upon "non-qualifying," see Sec. 718.204(c)(2), arterial blood gas studies. While the tests were technically non-qualifying, they nevertheless revealed a degree of abnormality--"[m]ild hypoxia ... present in room air ... [o]xygen saturation ... severely reduced." The mere fact that these test results do not "qualify" to invoke a presumption of pneumoconiosis independently of a physician's diagnosis does not mean they may not support such a diagnosis. The ALJ erred in rejecting Dr. Nadel's diagnosis on this basis.
 
 
 12
 Finally, the ALJ thought it critical that a pulmonary function study relied upon by Dr. Nadel was later determined by another physician to have been invalid because of the claimant's "variable effort." While an ALJ properly can reject such a study on the basis of a reviewing physician's opinion that they are invalid for want of effort, see Zeigler Coal Co. v. Sieberg, 839 F.2d 1280, 1283 (7th Cir.1988), this may only be done when the reviewing physician has satisfactorily explained his reasons for finding the test results invalid, see Shrader v. Califano, 608 F.2d 114, 118 (4th Cir.1979), and on the basis of a reasoned explanation by the ALJ of why he has accepted the opinion of the reviewing physician over that of a physician administering the test. Here the reviewing physician's opinion is cursory and the ALJ's explanation of his acceptance of it lacking. Accordingly, though invalidity might properly have been found if supported by adequate reasons, the ALJ has not properly found invalidity.
 
 
 13
 We next note an error conceded to have occurred in rejecting Dr. Blackwell's diagnostic report.
 
 
 14
 Dr. Blackwell's report diagnosed Profitt as having "chronic obstructive pulmonary disease, possible pneumoconiosis," and indicated a belief that this condition was related to coal dust exposure in Profitt's coal mine employment. The ALJ rejected this diagnosis as insufficiently probative because it only diagnosed "possible pneumoconiosis." This was plainly erroneous. The report contains an unequivocal diagnosis of "legal" pneumoconiosis in its identification of a "chronic obstructive pulmonary disease" that was opined to be related to coal dust exposure. See 20 C.F.R. Sec. 718.201 (" 'pneumoconiosis' means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, arising out of coal mine employment"). In context it is obvious that the reference to "possible pneumoconiosis" was to "clinical" pneumoconiosis, which is but one form of "legal" pneumoconiosis. See id. While Dr. Blackwell's report does not compel acceptance as a matter of law, it was error to reject it on the basis given by the ALJ. Profitt is therefore entitled to have his claim reconsidered free of this error.[3]
 
 III
 
 15
 Because of these errors which clearly prejudiced the claimant's presentation of his claim, we must remand for reconsideration in light of this opinion. In remanding, we note, in agreement with the Director, that if the ALJ were now to find pneumoconiosis established, the further question whether Profitt is totally disabled, and if so, whether this is due to pneumoconiosis, must yet be addressed.
 
 
 16
 IT IS SO ORDERED.
 
 
 
 [1]
 There is a side issue in this case which we need not address, but mention simply to indicate our awareness of its presence and the reason we need not address it. Profitt's claim was a successive one and the ALJ thought that under extant BRB case authority this required him first to determine whether there had been a material change in the claimant's condition and then, if so, whether he was now entitled to benefits under the appropriate regulations based on that changed condition. See Eccher v. Director, OWCP, 10 Black Lung Rep. (MB) 1-1 (Ben.Rev.Bd.1987). Whether such a bifurcated approach is required is, we are advised, a matter disputed by the Director that may eventually require judicial resolution. It need not be here, however, because the ALJ ultimately rejected the claim "on the merits" by concluding that Profitt's then condition did not entitle him to benefits under the Part 718 regulations, and the BRB reviewed only that "merits" determination. It alone is accordingly before us
 
 
 [2]
 Clinical pneumoconiosis refers to the lung disease caused by fibrotic reaction of the lung tissue to inhaled dust, which is generally visible on chest x-ray films as opacities. Usery v. Turner-Elkhorn Mining Co., 428 U.S. 1, 7 (1976). Legal pneumoconiosis refers to all lung diseases which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine employment. 20 C.F.R. Sec. 718.201
 
 
 [3]
 We agree with the Director that the ALJ did not err in rejecting Dr. Pellegrini's diagnosis as insufficient to establish pneumoconiosis