Playford R. JORDAN, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.

No. 77–1932.

United States Court of Appeals, Fourth Circuit.

Argued May 1, 1978.

Decided Sept. 19, 1978.

---

Arold H. Ripperger, Baltimore, Md. (Mary Ellen Brooke, Baltimore, Md., on brief), for appellant.

Fred Marinucci, Asst. Regional Atty., Philadelphia, Pa. (Jervis S. Finney, U. S. Atty., Baltimore, Md., Daniel F. Goldstein, Asst. U. S. Atty., Baltimore, Md., Stephanie W. Naidoff, Regional Atty., Philadelphia, Pa., on brief), for appellee.

Before WINTER, BUTZNER and HALL, Circuit Judges.

WINTER, Circuit Judge:

Jordan, a coal miner for more than fifteen years, appeals from the denial of his claim for black lung benefits under 30 U.S.C. §§ 921–925.[1] Because we think the Secretary's explanation of his rejection of evidence developed after June 30, 1973 was inadequate, we reverse and remand the case for further proceedings.

Jordan submitted his application for benefits in March, 1972, and a hearing before an administrative law judge (ALJ) was held in March, 1975. The medical evidence before the ALJ was conflicting. A ventilatory function study performed on April 5, 1972 showed an FEV of 2.61 and an MVV of 124, both above the values that the regulations hold to establish pneumoconiosis. An April 5, 1972 x-ray was initially read positive for pneumoconiosis 1/lp by a certified A reader, but two B readers later reread the x-ray to be negative.[2] A physician's report from an April 23, 1973 exami-

---

1. These sections, popularly called the Black Lung Act, were recently amended by the Black Lung Benefits Reform Act of 1977, Pub.L.No. 95–239, 92 Stat. 95 (1978). We held this case in abeyance to determine whether the amendments were to be applied to pending cases. Having concluded that the amendments are not to be retroactively applied, *Treadway v. Califano*, —— F.2d —— (4 Cir. 1978), we decide the case in accordance with the pre-existing law. We note, however, that Section 15 of the amendments grants every claimant with a pending claim the right to have his claim administratively reviewed under the new proof provisions but subject to a limitation of benefits. If Jordan does not prevail on remand, he may wish to exercise this right.

2. X-ray readers are rated by the National Institute of Occupational Safety and Health. Because B readers have greater experience and proficiency than A readers, this court held that the Secretary could justifiably favor the conclusions of a B reader in the event of a conflict between the two in the interpretation of an x-ray. *Sharpless v. Califano*, 585 F.2d 664 (4 Cir. 1978). Section 5(a) of the new amendments expressly prohibits the practice of having x-rays reread by B readers, but, as we observed in footnote 1, that change does not affect this case.

nation concluded that Jordan was suffering from pulmonary emphysema. However, the diagnosis was not supported by any chest studies. There was also testimony that Jordan, who had not worked in the mines since 1968, suffered from various subjective symptoms of a lung impairment—shortness of breath, fatigue, coughing and dizziness.

■ The ALJ denied relief. He found that the credible x-ray evidence did not establish pneumoconiosis, that the pulmonary function studies did not produce values corresponding to a disability, and that the credible evidence, viewed as a whole, did not demonstrate a chronic respiratory or pulmonary lung impairment.[3]

■ Jordan next sought relief from the administrative appeals council. Several new items of medical evidence, not all of it favorable to Jordan, were submitted to this body.[4] Supporting his claim was a November, 1975 x-ray read positive 2p, lg, and a physician's report stating that Jordan "appeared to be incapable of performing steady work beyond sedentary work levels" and estimating the overall loss of functional capacity at 75%. On the other hand, there were several pulmonary function and blood gas studies that produced values above the minima specified in the regulations and three negative x-rays from October, 1975. Stating only that the additional evidence had been considered, the appeals council

summarily affirmed the denial of benefits. An appeal to the district court was unsuccessful.

■ The standard by which we review administrative determinations regarding eligibility for black lung benefits is that of substantial evidence: the administrative determination will not be disturbed if it is supported by substantial evidence in the record as a whole. *Oppenheim v. Finch,* 495 F.2d 396 (4 Cir. 1974). Before we determine the substantiality of the evidence to support the administrative determination, we first ascertain whether the Secretary has discharged his duty to consider all relevant evidence. A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious. This case is not within the exception. Moreover, conclusory administrative determinations may conceal arbitrariness.

To eliminate these problems, we held in *Arnold v. Secretary,* 567 F.2d 258 (4 Cir. 1977), "that the Secretary, in determining an applicant's entitlement to black lung benefits, must consider all relevant evidence, including that accumulated after June 30, 1973, and must indicate explicitly that such evidence has been weighed and its weight." 567 F.2d at 259. We think the opinion of the appeals council, stating as it

3. A miner need not prove the existence of pneumoconiosis in order to qualify for benefits. 30 U.S.C. § 921(c)(4) provides:

> (4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. . . . The Secretary may rebut such presumption only by

establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

4. To qualify for benefits from HEW, a claim must have been filed before June 30, 1973, and the claimant must demonstrate that he was totally disabled due to pneumoconiosis by that date. Evidence obtained after June 30, 1973 is nevertheless relevant to the issue of eligibility; because pneumoconiosis typically develops over a period of time, proof that a miner suffers from the disease in 1975 may suggest its presence prior to the June 30, 1973 cutoff. In *Talley v. Mathews,* 550 F.2d 911 (4 Cir. 1977), we held that the Secretary must consider evidence developed *after the cutoff, although the* evaluation of its persuasiveness was left to him.

did only that the additional evidence had been considered, was plainly deficient under *Arnold.* The November, 1975 x-ray and the second physician's report sufficiently supported the existence of a qualifying disability to require that the Secretary explain why they were not persuasive.

We therefore reverse and remand the case to the district court for the purpose of returning it to the Secretary with directions to give this claim adequate consideration and to articulate his conclusions with respect thereto.

*REVERSED AND REMANDED.*