**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CONSOLIDATION COAL COMPANY,
Petitioner,

v.

DONALD E. FILER; DIRECTOR,

OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 95-1270

On Petition for Review of an Order
of the Benefits Review Board.
(92-2525-BLA)

Argued: December 8, 1995

Decided: March 26, 1996

Before WILKINS and NIEMEYER, Circuit Judges, and PAYNE,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

_____

Reversed, vacated, and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Steele Mattingly, JACKSON & KELLY, Mor-
gantown, West Virginia, for Petitioner. J. Scott Leckie, YABLON-
SKI, COSTELLO, LECKIE & CHABAN, Washington, Pennsylva-
nia, for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Consolidation Coal Company ("Consolidation") appeals the decision of the United States Department of Labor Benefits Review Board (the "Board") awarding lifetime disability benefits to Donald E. Filer under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. For the reasons which follow, we reverse and vacate the Board's decision and remand the matter for further proceedings.

BACKGROUND

Filer was employed as an underground coal miner for almost 43 years. A few days after retiring in August 1990, Filer submitted a claim for lifetime benefits claimed by virtue of a total, permanent disability allegedly caused by pneumoconiosis arising out of employment in a coal mine. It was then, and remains now, undisputed that: (1) Filer was employed as an underground coal miner for almost 43 years; (2) Filer is totally disabled largely, if not completely, as the result of chronic obstructive pulmonary disease; and (3) Filer's chest x-rays do not indicate the presence of coal miners' pneumoconiosis. Upon initial review, the district director for the United States Department of Labor determined that there was sufficient evidence to support Filer's entitlement to the disability benefits he claimed.

Consolidation requested that the matter be referred to the Office of Administrative Law Judges for a hearing de novo which was held on March 19, 1992. At the hearing, the Administrative Law Judge heard testimony and received exhibits and, on August 17, 1992, issued a decision and an order awarding benefits. Consolidation sought review of the ALJ's decision by the Board which held that it was based upon substantial evidence and rejected Consolidation's appeal. Consolidation petitioned for reconsideration, but the Board denied the petition. This appeal followed.

2

Under § 902(b) of the Act and the applicable regulations, 20 C.F.R. § 718.201, pneumoconiosis is defined as a"chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." This includes any chronic pulmonary disease resulting in impairment significantly related to, or substantially aggravated by, dust exposure arising out of employment in a coal mine. Consequently, the legal definition of pneumoconiosis is significantly broader than the medical definition of the term. Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995); see Nance v. Benefits Review Bd., 861 F.2d 68, 71 (4th Cir. 1988).

The controlling regulations permit a finding of pneumoconiosis on the basis of: (1) chest x-rays meeting regulatory criteria; (2) biopsies or autopsies conforming to regulatory requirements; or (3) certain presumptions created by regulation. None of these three modes of proof are implicated in this appeal. Instead, we are concerned here with the fourth permissible method for demonstrating pneumoconiosis: the medical opinion method, pursuant to which:

> [a] determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in section 718.201. Any such finding shall be based upon objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such findings shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4) (emphasis added). The record reflects the opinions of seven physicians addressing Filer's condition.

First, on May 7, 1986, after Filer had worked 39 years "inside the mines," Dr. A.K. Pfister, a specialist in internal medicine and infectious disease, and Dr. J.T. Smith, whose specialty does not appear in the record, jointly opined that there was "[n]o evidence of occupational pneumoconiosis." (J.A. 11.) In their opinion, based on physical examination, x-rays and exercise testing, Filer's"[p]ulmonary func-

3

tion changes [were] related to bronchospastic airway disease." (J.A. 11.)

Second, on August 23, 1990, Dr. Jayesh Gosai, whose specialty is not reflected in the record, expressed the view based on a physical examination, medical history and physical testing, that there was "COPD, possible black lung disease and bronchial asthma." (J.A. 18.)

Third, on September 13, 1990, at the request of the United States Department of Labor, Dr. Yong Dae Cho examined Filer and recorded his medical history. Dr. Cho, who is Board certified in family practice, expressed the view that Filer suffered from severe COPD due to "coal dust and cigarette smoking," but was unable to differentiate between the effects of coal mine dust and cigarette smoking. (J.A. 56 and 58.) Notwithstanding his expressed view that simple pneumoconiosis can never be disabling, Dr. Cho also gave the opinion that exposure to both coal mine dust and cigarette smoke contributed to Filer's disability. (J.A. 51 and 56).

Fourth, on October 5, 1990, Dr. Surinder K. Aneja, a specialist in pulmonary medicine, having considered physical examination and laboratory findings, expressed the view that Filer suffered from "severe COPD" and "mild congestive heart failure secondary to chronic cor-pulmonale." (J.A. 17.)

Fifth, on May 6, 1991, following physical examination and laboratory evaluations, Dr. Joseph J. Renn, III, a pulmonary specialist, expressed the opinion that:

> Mr. Donald Filer has intristic asthma, exogenous obesity, Cushingoid changes and, by past medical history, congestive heart failure. He does not have pneumoconiosis. He has a very severe obstructive venialtory defect of sufficient degree to prevent him from being able to perform his last known coal mining job of dumper and hoister or any similar work effort. It is with a reasonable degree of medical certainty Mr. Donald Filer's intristic asthma, exogenous obesity, Cushing-oid changes and congestive heart failure

4

were <u>neither caused, nor contributed to, by his exposure to coal mine dust</u>.

(J.A. 15.) (emphasis added).

Sixth, Dr. Warfield Garson, who is Board certified in preventive medicine, examined Filer on May 30, 1991, and, on the basis of physical examination, past medical history and pulmonary function tests, past and present, expressed the following view:

> I find this man, <u>in view of his pulmonary signs</u>, symptoms, to be totally and permanently <u>disabled from his previous job as an underground coal miner</u>. However, these findings are <u>primarily due to his emphysema</u>, and I do <u>not find any evidence</u> of coal workers' <u>pneumoconiosis</u> at this time.

(J.A. 38.) (emphasis added). On December 3, 1991, Dr. Garson wrote to Filer's counsel in response to a letter which is not in the record. At that time, Dr. Garson expressed a somewhat different view:

> Mr. Filer's pulmonary <u>disability</u> of <u>chronic obstructive lung disease</u> is <u>primarily due to his emphysema which</u>, in part, was <u>caused</u> by his long term intermittent <u>smoking</u> of cigarettes <u>and</u> to his exposure to <u>underground coal mine dust</u> which <u>aggravated</u> his pulmonary problem. His underground coal mine dust exposure <u>substantially contributed</u> to his pulmonary impairment, not withstanding [sic] the fact that his chest x-ray is negative for Coal Worker's Pneumoconiosis, which, by the way, even if originally present tends to fade out in the presence of severe emphysema.

(J.A. 39.) (emphasis added). Dr. Garson, however, was unable to determine the extent to which Filer's disability was caused by cigarette smoking or by coal dust exposure. (J.A. 90.)

Seventh, on March 2, 1992, Dr. Gregory J. Fino, a pulmonary specialist, on the basis of physical examination, medical history, and respiratory testing and x-rays, expressed the view (confirming his report of November 22, 1991) that:

5

> There is no pneumoconiosis, but there is <u>disabling respiratory impairment</u> arising out of <u>cigarette smoking</u> and [Filer's] <u>hereditary predisposition to asthma.</u> This man would be as disabled as I find him now had he never stepped foot in the coal mines.

(J.A. 27) (emphasis added).**1**

Confronted with this ambivalent record, the ALJ expressed the following opinion:

> In this case, two examining physicians have concluded that claimant's disabling pulmonary impairment arises out of coal mine employment (Dr. Cho and Dr. Garson), and two examining physicians have found that claimant's pulmonary impairment is unrelated to his coal mine employment (Dr. Renn and Dr. Fino). (Drs. Pfister and Smith examined claimant in 1986, before his pulmonary condition became severe.) <u>Frankly, I find it difficult to accept that claimant's severe pulmonary impairment has no relation to his forty two years of exposure to coal dust while working as a coal miner. The opinions of Drs. Renn and Fino in this regard are simply not credible</u>. I note also that while Dr. Renn and Dr. Fino are highly qualified board certified pulmonologists, Dr. Garson is board certified in preventive medicine which includes occupational medicine. His credentials are very impressive, and I believe that he is as qualified as a physician who is board certified in pulmonary diseases to determine the etiology of a lung disease.
>
> The findings of Dr. Cho and Dr. Garson are also corroborated by the opinions of Dr. Gosai, who diagnosed possible black lung disease, and Dr. Aneja, who diagnosed cor pul-

---

**1** The ALJ's opinion reports that Dr. A. Dahahn, a certified pulmonologist, reviewed the medical evidence and on January 21, 1992, opined that there was insufficient evidence to justify diagnosis of occupational pneumoconiosis and that Filer's respiratory disability had not been caused by coal dust exposure or occupational pneumoconiosis. (J.A. 182). The record does not contain Dr. Dahahn's report.

6

monale, one of the indicia of coal workers' pneumoconiosis. Finally, I feel that it is significant that Dr. Fino agreed that the symptoms of claimant's asthma could be exacerbated by exposure to coal dust, which places claimant's asthma within the definition of pneumoconiosis in § 718.201. I therefore conclude that pneumoconiosis has been established at (a)(4).

(J.A. 183.) (emphasis added). The Board affirmed the ALJ's decision as based on substantial evidence. (J.A. 186.)

DISCUSSION

To establish entitlement to disability benefits, Filer was obligated to prove: (1) the existence of pneumoconiosis; (2) that pneumoconiosis arose out of coal mine employment; and (3) that his totally disabling pulmonary disease is due, at least in part, to pneumoconiosis. Robinson v. Pickands Mather & Co., 914 F.2d 35, 36 (4th Cir. 1990). Judicial review of the administrative decision is governed by the substantial evidence standard. Consequently, the administrative determination will not be disturbed if it is supported by substantial evidence in the record as a whole. Hobbs, 45 F.3d at 820. Accordingly, we must review the record independently and determine whether substantial evidence supports the findings of the ALJ. Cox v. Shannon-Pocahontas Mining Co., 6 F.3d 190, 192 (4th Cir. 1993); Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978).

However, before an appellate court can determine whether substantial evidence exists to support the administrative determination, it must "first ascertain whether the Secretary has discharged his duty to consider all relevant evidence." Jordan, 582 F.2d at 1335. This is because the courts "face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence." Arnold v. Secretary of H.E.W., 567 F.2d 258, 259 (4th Cir. 1977). As we explained in Arnold:

> Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's

7

> "duty to scrutinize the record as a whole to determine
> whether the conclusions reached are rationale."

Id. (citations omitted). Moreover, "bald conclusion[s], unsupported by reasoning or evidence, [are] generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious." Jordan, 582 F.2d at 1335. And,"conclusory administrative determinations may conceal arbitrariness." Id.

To eliminate these problems, the ALJ is obligated to consider all relevant evidence and "must indicate explicitly that such evidence has been weighed and its weight." Id. (citing Arnold, 567 F.2d at 259). In particular, the ALJ is obligated to explain the specific reasons for attributing greater weight to certain medical opinions than others and to address specifically each medical opinion which disagrees with his ultimate conclusion. See Hobbs, 45 F.3d at 819. Failure to give proper consideration to all relevant evidence requires remand for further consideration. Maxey v. Califano, 598 F.2d 874, 875 (4th Cir. 1979); Arnold, 567 F.2d at 259-60.

The administrative determination in this case must be remanded because the decision of the ALJ does not reflect that all relevant evidence has been considered. Nor does the ALJ's opinion satisfy the requirement for an on-the-record explication of the reasons which caused him to attribute greater weight to certain medical opinions and reject others and which prompted him to disregard medical opinions which were at odds with the ultimate conclusions he reached. Although it is true that the ALJ's opinion in this case summarizes the medical reports and the testimony of the doctors, the articulated reason for the ALJ's rejection of the opinions of Drs. Renn and Fino is merely that they "are simply not credible." (J.A. 183.) The ALJ does not share the reasons for this credibility determination, but it appears in the following context: "[F]rankly, I find it difficult to accept that claimant's severe pulmonary impairment has no relation to his forty two years of exposure coal dust while working as a coal miner. The opinions of Drs. Renn and Fino in this regard are simply not credible." (J.A. 183.) (emphasis added).

Then, having stated that he finds Dr. Garson, who is certified in preventive medicine, to be "equally as qualified" as Drs. Renn and

8

Fino, who are certified in pulmary medicine, the ALJ did not explain why he credited an opinion from Dr. Garson which appears to be at odds with the opinion that Dr. Garson had expressed just six months earlier. In sum, the critical component of the ALJ's opinion is nothing more than a bald conclusion of the type which is of little, if any, use to a reviewing court.

We note that the ALJ also reached the conclusion that the findings of Dr. Cho and Dr. Garson were corroborated by the opinion of Dr. Gosai because, as the ALJ put it, he "diagnosed possible black lung disease" and by the opinion of Dr. Aneja because he "diagnosed cor pulmonale," one of the indicia of coal workers' pneumoconiosis. It may be that a speculative ("possible") diagnosis can provide corroboration but, without an adequate explanation of why that is the case, this court cannot properly perform the review required of it.

The opinion of the ALJ is not unlike the one we found defective in Arnold because, although the ALJ claimed to have considered all of the evidence, the opinion gave no indication of the weight afforded to certain evidence and in fact amounted to no more than a "bare recital that he considered the evidence." Arnold, 567 F.2d at 260. On the other hand, the ALJ's opinion here is unlike the opinion in Hobbs where the ALJ "set forth reasons why he had attributed greater weight to certain medical opinions and he specifically addressed each medical opinion which disagreed with his ultimate conclusion." Hobbs, 45 F.3d at 820.

It is especially important where, as here, there are negative chest x-rays and undisputed evidence of disability, that the ALJ weigh, on the record, the conflicting medical opinions and evidence and explain precisely why one line of medical authority is adopted and the other is rejected. Indeed, unless the ALJ's opinion confronts the conflicts, weighs the opinions and the evidence and articulates why one line of authority is persuasive and the other is not, judicial review under a substantial evidence standard is not possible.

That is of particular significance here because the ALJ relied upon the medical opinion of Dr. Garson, who is certified in preventive medicine, and who only a few months previously had expressed what appears to be a materially different opinion and on the testimony of

9

Dr. Cho whose credibility is called into question by virtue of his diagnosis of a contributing disability while at the same time espousing the belief that simple coal workers' pneumoconiosis is never disabling.[2] Furthermore, the ALJ rejected, with no substantive explanation, the views of several physicians, certified in pulmonary medicine, who have concluded either that there is an absence of pneumoconiosis or that the evidence is insufficient to support a finding of pneumoconiosis. Decisions on conflicting evidence such as this must be addressed and explained at the administrative level before judicial review under the substantial evidence standard can be accomplished meaningfully.

For these reasons, the decision of the Benefits Review Board is REVERSED and the case is REMANDED for further proceedings consistent with this Opinion.

REVERSED, VACATED, AND REMANDED

_____

[2] We need not here consider Consolidation's argument that, under Penn Alleghany Coal Co. v. Mercatell, 878 F.2d 106 (3rd Cir. 1989), Dr. Cho's medical opinion must be rejected because he subscribes to the view that "simple coal worker's pneumoconiosis" is never disabling. That issue, however, must be considered in the proceedings on remand.

10