UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BETHENERGY MINES, INCORPORATED,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'

No. 95-1886

COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
SHIRLEY ROWAN, survivor of
Delmer B. Rowan,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(93-1435-BLA)

Argued: April 5, 1996

Decided: July 30, 1996

Before HALL, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Vacated and remanded with instructions by unpublished per curiam
opinion. Judge Hall wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** William Steele Mattingly, JACKSON & KELLY, Mor-
gantown, West Virginia, for Petitioner. Richard K. Wehner, WEH-
NER LAW OFFICES, Kingwood, West Virginia, for Respondents.
**ON BRIEF:** Kathy L. Snyder, JACKSON & KELLY, Morgantown,
West Virginia, for Petitioner.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Shirley L. Rowan (the Claimant), the surviving spouse of Delmer B. Rowan (Rowan), applied for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-45. Following an initial decision in favor of the Claimant, the responsible operator, BethEnergy Mines, Inc. (BethEnergy) requested a hearing before an ALJ. The ALJ awarded the Claimant benefits. BethEnergy appealed to the Benefits Review Board (the Board), which affirmed the award of benefits. BethEnergy then filed a petition for review with this court. We grant the petition for review, vacate the Board's decision, and remand to the Board with instructions to remand to the ALJ for further proceedings.

I.

Under the Black Lung Benefits Act, "[b]enefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis." 20 C.F.R. § 718.205(a). For claims, such as this one, filed after January 1, 1982, "death will be considered to be due to pneumoconiosis if . . . pneumoconiosis was a substantially contributing cause or factor leading to the miner's death . . . ." 20 C.F.R.§ 718.205(c)(2). Here, BethEnergy concedes that Rowan had pneumoconiosis. Therefore, the only substantive issue in this case is whether Rowan's pneumoconiosis "was a substantially contributing cause or factor leading to [his] death." See id.

At the hearing before the ALJ, the Director of the Office of Workers' Compensation Programs submitted the following evidence in the record regarding whether coal workers' pneumoconiosis contributed to Rowan's death: Rowan's death certificate, which stated that Rowan's immediate cause of death was acute respiratory failure, due to or as a consequence of chronic obstructive pulmonary disease; an autopsy report prepared by Dr. Franyutti, which concluded that

2

Rowan had "[d]iffuse moderate simple coal worker's pneumoconiosis with severe pulmonary emphysema with right moderate and left large emphysematous bullae formation," "[c]hronic and acute bronchitis," and "[a]reas of pneumonitis, bilateral" (J.A. 7); a medical report prepared by Dr. Gaziano, which stated that coal workers' pneumoconiosis substantially contributed to Rowan's death; and copies of Rowan's medical records. The Director also submitted testimony given by Rowan in a prior related case. In his testimony, Rowan described his medical problems and his history of coal-mine employment and stated that he had smoked about a pack of cigarettes a day since 1950.

The evidence submitted by the Claimant included the reports of Drs. Franyutti, Rasmussen, Doyle, and Harron. All these doctors concluded that coal workers' pneumoconiosis contributed to Rowan's death. Additionally, the Claimant and one of Rowan's coworkers testified at the hearing in support of the claim for benefits.

The evidence submitted by BethEnergy included the reports of Drs. Bush and Hutchins, the deposition testimony of Dr. Renn, the report and deposition testimony of Dr. Kleinerman, and the report and deposition testimony of Dr. Fino. All these doctors concluded that coal workers' pneumoconiosis did not contribute to Rowan's death. BethEnergy also submitted the deposition testimony of Dr. Franyutti.

In the decision and order awarding benefits, the ALJ first determined that Rowan worked in the coal mines for at least twenty-four years. The ALJ then summarized each of the medical reports and recounted the testimony given by Rowan before he died, the testimony given by the Claimant and Rowan's coworker at the hearing, and the deposition testimony of Drs. Franyutti, Kleinerman, Fino, and Renn. The ALJ noted that the statement on the death certificate that Rowan's death was due to chronic obstructive pulmonary disease "is not inconsistent with the definition of pneumoconiosis" in 20 C.F.R. § 718.201. (J.A. 225-26). The ALJ observed that five doctors (Drs. Franyutti, Gaziano, Rasmussen, Doyle and Harron) concluded that pneumoconiosis contributed to Rowan's death, and five doctors (Drs. Kleinerman, Bush, Hutchins, Fino, and Renn) concluded that pneumoconiosis did not contribute to Rowan's death. The ALJ then stated:

> While there are an equal number of experts on both sides,
> I am more persuaded by the evidence in favor of the Claim-

3

ant because: (1) Dr. Franyutti was the one who performed the autopsy and was in the best position to make a judgment, while none of [BethEnergy's] doctors saw [Rowan] after he died, and (2) Dr. Gaziano was hired by the District Director to make an evaluation and not by either the Claimant or [BethEnergy], so he has a more impartial status. Both Drs. Franyutti and Gaziano believed that pneumoconiosis contributed to the miner's death. Moreover, in considering this issue, I am mindful of the miner's many years of coal mine employment. Under these circumstances, I find that the Claimant has established that pneumoconiosis was a substantially contributing cause or factor leading to the miner's death . . . .

(J.A. 226). Accordingly, the ALJ awarded survivor's benefits to the Claimant.

The Board affirmed the ALJ's award of benefits. The Board concluded that the ALJ weighed the evidence and properly gave determinative weight to Dr. Franyutti's opinion because Dr. Franyutti performed the autopsy. The Board also concluded, "We need not address the [ALJ's] findings with respect to Dr. Gaziano's opinion since the [ALJ] provided a proper, alternative reason for finding that the miner's death was due to pneumoconiosis." (J.A. 230 n.1). BethEnergy noted a timely appeal from the Board's order.

II.

Before addressing BethEnergy's arguments on appeal, we must consider the principles that govern our review of black lung cases. The ALJ is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence. Doss v. DOWCP, 53 F.3d 654, 658 (4th Cir. 1995). The Board reviews the ALJ's findings to determine if they are supported by substantial evidence. Id.; see 33 U.S.C. § 921(b)(3). We review the Board's decision only for errors of law and to ensure that the Board adhered to the correct standard of review. Doss , 53 F.3d at 658. Therefore, we must affirm the Board's decision if the Board properly decided that the ALJ's findings are supported by substantial evidence. Id. at 659. To determine whether the ALJ's findings are supported by

4

substantial evidence, we undertake an independent review of the record. Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). But in undertaking our independent review of the record, we must confine our review to the grounds upon which the Board based its decision. See Grigg v. DOWCP, 28 F.3d 416, 418 (4th Cir. 1994); see also Securities & Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943).[1] With these principles in mind, we now address BethEnergy's arguments on appeal.

III.

We note initially that BethEnergy concedes that the record contains substantial evidence that could support a finding that pneumoconiosis contributed to Rowan's death. Despite this concession, BethEnergy contends that the Board's decision affirming the award of benefits should be vacated and the case remanded to the Board with instructions to remand to the ALJ for further proceedings. According to BethEnergy, further proceedings are necessary because the ALJ failed to explain sufficiently his reasons for crediting the opinion of Dr. Franyutti and failed to evaluate the other relevant evidence as the law requires. We agree.

Dr. Franyutti performed the autopsy on Rowan. Because the autopsy prosector, unlike reviewing pathologists, has the opportunity to conduct a gross examination, it is permissible in some cases for an ALJ to credit the opinion of the autopsy prosector over the opinions of reviewing pathologists.[2] See Peabody Coal Co. v. DOWCP, 972

_____

[1] For this reason, we do not address the ALJ's reliance on Dr. Gaziano's opinion. Because the Board specifically declined to consider the ALJ's crediting of Dr. Gaziano's opinion as a basis for affirming the award of benefits, we are precluded from considering it as well. See Dayton v. Consolidation Coal Co., 895 F.2d 173, 175 (4th Cir. 1990) (holding that in reviewing the decision of the Benefits Review Board, the court must confine itself to the grounds upon which the Board based its decision and may not consider determinations of the ALJ that were not addressed by the Board), rev'd sub nom. on other grounds, Pauley v. BethEnergy Mines, Inc., 501 U.S. 680 (1991).

[2] An autopsy prosector conducts both a gross examination of the miner's lungs and a microscopic examination of slides of lung tissue. See

5

F.2d 178, 182 (7th Cir. 1992); United States Steel Corp. v. Oravetz, 686 F.2d 197, 200 (3d Cir. 1982). But it is improper for an ALJ to give the opinion of the autopsy prosector determinative weight without considering the quality of the autopsy prosector's opinion and the quality of reviewing pathologists' contrary opinions. See Peabody Coal, 972 F.2d at 182 (refusing to condone an ALJ's preference for the autopsy prosector's opinion as "a blanket rule"); Freeman United Coal Mining Co. v. Stone, 957 F.2d 360, 362 (7th Cir. 1992) ("Though ALJs have discretion in weighing conflicting medical evidence, they are still required to at least consider all of the relevant evidence presented."). And an ALJ should provide an adequate rationale for concluding, under the facts of the case, that the autopsy prosector's opportunity to conduct a gross examination, rather than merely review slides, renders the autopsy prosector's opinion superior to the reviewing pathologists' opinions. See Freeman United Coal Mining, 957 F.2d at 362 (holding that an ALJ erred in disregarding the opinions of certain doctors and relying on the autopsy report when nothing in the record suggested that access to the body enhanced the accuracy of the autopsy prosector's opinion); Urgolites , 17 Black Lung Rep. at 1-23 (holding that an ALJ erred by not giving an adequate rationale for concluding that the autopsy prosector's gross examination rendered his opinion superior to the opinions of doctors who reviewed the slides).

Here, Dr. Franyutti performed the autopsy, conducting both a gross examination of Rowan's lungs and a microscopic examination of slides of lung tissue. He concluded that coal workers' pneumoconiosis contributed to Rowan's death. But three of the doctors retained by BethEnergy--Drs. Kleinerman, Bush, and Hutchins--conducted microscopic examinations of the same lung tissue examined by Dr. Franyutti and concluded that coal workers' pneumoconiosis did not

_____

Urgolites v. BethEnergy Mines, Inc., 17 Black Lung Rep. 1-20, 1-23 (BRB 1992). The autopsy prosector then prepares an autopsy protocol containing a gross description and a microscopic description. Reviewing pathologists conduct their own independent microscopic examinations of the slides of lung tissue. But they are dependent on the autopsy prosector's description of the gross examination of the lungs. See Urgolites, 17 Black Lung Rep. at 1-23.

6

contribute to Rowan's death. The ALJ did not evaluate the quality of Dr. Franyutti's opinion and the quality of the contrary opinions of Drs. Kleinerman, Bush, and Hutchins. Therefore, the ALJ had no basis for concluding that Dr. Franyutti's microscopic examination was superior to the opinions of Drs. Kleinerman, Bush, and Hutchins.[3]

The ALJ also did not provide an adequate rationale for concluding that Dr. Franyutti's opportunity to conduct a gross examination rendered his opinion superior to the opinions of Drs. Kleinerman, Bush, and Hutchins, who only conducted microscopic examinations. The ALJ simply stated, "Dr. Franyutti was the one who performed the autopsy and was in the best position to make a judgment, while none of [BethEnergy's] doctors saw the miner after he died." (J.A. 226). This bald conclusion, under the facts of this case, does not provide a basis for affirming the award of benefits. See Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious.").

_____

[3] The ALJ did make an oblique reference to the quality of the opinions of Drs. Kleinerman, Bush, and Hutchins by stating, "Dr. Gaziano was hired by the District Director to make an evaluation and not by either the Claimant or [BethEnergy], so he has a more impartial status." (J.A. 226). To the extent that this statement reflects a finding that the doctors retained by BethEnergy are not credible merely because they were retained by BethEnergy, the finding is erroneous. An ALJ may not attribute bias to doctors because they were hired by one of the parties. See Melnick v. Consolidation Coal Co., 16 Black Lung Rep. 1-31, 1-36 (BRB 1991) (en banc) ("[W]ithout specific evidence indicating that a report prepared for [an] employer is unreliable, an administrative law judge should consider that report as equally reliable as the other reports of record."). As the Supreme Court has stated in a related context:

> Although each [physician] received a fee, that fee is recompense for . . . time and talent otherwise devoted to private practice or other professional assignment. We cannot, and do not, ascribe bias to the work of these independent physicians, or any interest on their part in the outcome of the administrative proceeding beyond the professional curiosity a dedicated [physician] possesses.

Richardson v. Perales, 402 U.S. 389, 403 (1971).

7

The ALJ did not provide any reasoning to support the conclusion that Dr. Franyutti "was in the best position to make a judgment" because he performed the autopsy. Moreover, it is not clear from the evidence in the record on appeal that Dr. Franyutti's gross examination was important to his determination that pneumoconiosis contributed to Rowan's death. A consultative report prepared by Dr. Franyutti over one year after he performed the autopsy states, in its entirety, "It is my opinion that the diffuse pneumoconiosis and pulmonary emphysema were contributing factors in the death of Mr. Delmer B. Rowan." (J.A. 216). At his deposition, Dr. Franyutti testified that generally it is necessary to conduct both a gross and a microscopic examination to confirm the presence of coal workers' pneumoconiosis, but that a pathologist who reads the autopsy prosector's description of the gross examination and conducts an independent microscopic examination of slides of lung tissue would have a similar ability to confirm the presence of coal workers' pneumoconiosis as the autopsy prosector. Dr. Kleinerman testified that in this case his review of Dr. Franyutti's description of the gross examination and his examination of the slides of lung tissue were "perfectly adequate" to determine "the extent and degree of any disease which may have occurred in the lung." (J.A. 200). Thus, we cannot say that this case is "so one-sided as to be obvious." See Jordan, 582 F.2d at 1335.

When an ALJ has not evaluated or sufficiently explained the weight accorded the relevant evidence, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's `duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" See Arnold v. Secretary of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)). We cannot, as the dissent suggests, overlook the inadequacy of the ALJ's reasoning simply because the record contains substantial evidence that could support a finding in favor of the claimant. It is well settled that at the center of the ALJ's adjudicative role is his duty to provide reasoned analysis in support of his conclusions. To allow a divorce of one from the other would create a dangerous system where an ALJ's reasoning would be beyond review. For the sake of all claimants and employers in Black Lung benefit cases, this, we cannot allow. Here, because the ALJ did not evaluate or sufficiently explain

8

the weight accorded the relevant evidence, this case must be remanded to the ALJ for further proceedings.[4]

IV.

We grant BethEnergy's petition for review. For the reasons stated herein, the Board's decision is vacated and the case is remanded to the Board with instructions to remand to the ALJ for further proceedings consistent with this opinion.

IT IS SO ORDERED

HALL, Circuit Judge, dissenting:

Today, in a case where the employer does not dispute the existence of substantial evidence in the record to support an award of benefits, the majority takes the rather remarkable step of scuttling the sound judgment of the ALJ and BRB -- not because it disagrees with the ultimate disposition of Shirley Rowan's claim, but because the ALJ chose to succinctly articulate the reasons for his ruling. As a jurist who believes that clarity is enhanced by brevity, I question the wisdom of the volume of words and pedantry of analysis demanded by today's decision.

_____

[4] BethEnergy also argues that the ALJ erred by asserting that the "statement on the death certificate that chronic obstructive pulmonary disease was involved is not inconsistent with the definition of pneumoconiosis" in 20 C.F.R. § 718.201. It is not clear whether the ALJ relied on this assertion in concluding that coal workers' pneumoconiosis was a substantially contributing cause of Rowan's death. For purposes of remand, we remind the ALJ that pneumoconiosis is defined in 20 C.F.R. § 718.201 to include "any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." Thus, while a diagnosis of chronic obstructive pulmonary disease is literally not inconsistent with a finding of legal pneumoconiosis, such a diagnosis is not sufficient to establish legal pneumoconiosis without a finding that the disease was related to coal-mine employment.

9

Shirley's burden of establishing that pneumoconiosis substantially contributed to her husband's demise is not an onerous one. She is entitled to survivor's benefits if pneumoconiosis served to hasten Delmer's death in any way. Shuff v. Cedar Coal Co. , 967 F.2d 977, 979-80 (4th Cir. 1992), cert. denied, 506 U.S. 1050 (1993).

It is undisputed that Delmer had pneumoconiosis. It is undisputed that Delmer worked in the mines for at least 24 years, and that an autopsy revealed an accumulation of anthracotic pigment in his lungs. No fewer than five qualified physicians, including the autopsy prosector, have concluded that Delmer's death was hastened by his pneumoconiosis. Every single medical opinion to the contrary submitted by the employer is premised, in whole or in very substantial part, on the discredited assumption that an obstructive pulmonary disorder, such as that suffered by Delmer, cannot be caused by coal mine employment. See Warth v. Southern Ohio Coal Co., 60 F.3d 173, 174 (4th Cir. 1995); Eagle v. Armco, Inc., 943 F.2d 509, 511 n.2 (4th Cir. 1991) (expert opinion that breathing coal mine dust does not cause chronic obstructive lung disease "must be considered bizarre in view of [ ] Congress' explicit finding to the contrary."); see also Stiltner v. Island Creek Coal Co., No. 95-1192, 1996 WL 328634, at *3 ("[W]e have rejected as inimical to the [Black Lung Benefits] Act the premise that obstructive disorders cannot be caused by coal-mine employment. . . .") (citation and internal quotation marks omitted). At oral argument, counsel for the company candidly conceded that his client did not dispute the existence of substantial evidence in the record to support an award of benefits, but that it instead challenged the ALJ's methodology in arriving at a conclusion.

This challenge should be to no avail. The ALJ's decision and order faithfully summarized the opinions of the various experts; it is, therefore, evident that he considered each and every one of them. In the end, the ALJ gave determinative weight to Delmer's lengthy mine employment and to the opinions of two of the experts who had concluded that Delmer's death had been hastened by pneumoconiosis. This decision was well within the scope of the discretion accorded the ALJ to weigh the evidence.

The BRB did not question any of the ALJ's stated grounds in support of his conclusion; rather, it explicitly approved of the ALJ's deci-

10

sion to give the opinion of the autopsy prosector substantial weight. Although such an approach may run afoul of Seventh Circuit precedent, see ante at 5-6, the Fourth Circuit does not require the prosector's opinion to itself be subjected to what is, in effect, a "legal" autopsy. It should be sufficient that the opinion is grounded in objective fact and is logical. Dr. Franyutti's opinion in this case undoubtedly meets those standards.

Having deemed his reliance on Dr. Franyutti's opinion sufficient, the BRB chose not to address the ALJ's decision to credit Dr. Gaziano's opinion and Delmer's employment longevity. It is, perhaps, unfortunate that the BRB did not expound more fully, in light of the majority's apparent willingness to seize upon its economy of verbiage as an excuse to have the ALJ reexamine what appears to be a clearly meritorious claim. Although it seems improbable that such a reexamination will produce a different result, it is inevitable that further proceedings will add to the expense of litigating this claim, which inures to the detriment of all.

I dissent.

11