UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BETHENERGY MINES, INCORPORATED,
*Petitioner,*

v.

SHIRLEY ROWAN, widow of Delmer
B. Rowan; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

*Respondents.*

No. 01-2148

On Petition for Review of an Order of
the Benefits Review Board.
(00-0980-BLA)

Argued: May 6, 2002

Decided: September 4, 2002

Before NIEMEYER and GREGORY, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Steele Mattingly, JACKSON & KELLY,
P.L.L.C., Morgantown, West Virginia, for Petitioner. Richard K.

Wehner, WEHNER LAW OFFICES, Kingwood, West Virginia, for Respondent Rowan. Rita A. Roppolo, UNITED STATES DEPART-MENT OF LABOR, Washington, D.C., for Respondent Director. **ON BRIEF:** Eugene Scalia, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This case comes before us for a second time on review from the Benefits Review Board ("Board"). For the reasons that follow, we affirm the ALJ's order awarding the appellee survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 ("Act").

### I.

Delmer B. Rowan ("Rowan") worked as a coal miner for at least twenty-four years.[1] It is undisputed that in September 1992, Rowan died from acute respiratory failure due to chronic obstructive pulmonary disease ("COPD"), and at the time of Rowan's death, pneumoconiosis was found in his lungs.[2] Appellee Shirley L. Rowan

---

[1] He also smoked approximately a pack of cigarettes a day for 47 years. J.A. 211.

[2] In December 1988, Rowan complained of significant shortness of breath, coughing, and wheezing. J.A. 34. Rowan was diagnosed with chronic obstructive pulmonary disease ("COPD") of a moderate to severe degree in January 1989 and was placed on respiratory medication. J.A. 33. He was subsequently treated with steroids, but continued to suffer from shortness of breath. J.A. 31. All of the physicians in this case agreed that Rowan's cigarette smoking caused, at least in part, his severe pulmonary emphysema.

("Claimant"), Rowan's surviving spouse, applied for survivor's benefits under the Act, asserting that pneumoconiosis substantially contributed to her husband's death.

The Office of Workers' Compensation Programs initially approved Claimant's application for benefits, but at the request of BethEnergy Mines, Inc. ("BethEnergy"), Rowan's former employer, it forwarded the claim to the Office of Administrative Law Judges. An Administrative Law Judge ("ALJ") weighed the evidence of the ten doctors who rendered opinions in this case. All ten doctors agreed that pneumoconiosis was present in Rowan's lungs, however, their opinions differed as to the *amount* of pneumoconiosis present. Five doctors—Drs. Franyutti,[3] Gaziano, Harron, Rasmussen, and Doyle—were of the opinion that pneumoconiosis contributed to the miner's death. The other five doctors—Drs. Bush, Kleinerman, Fino, Renn, and Hutchins —opined that the pneumoconiosis in Rowan's lung tissue was too minimal to play any role in causing Rowan's death. Each doctor submitted a letter explaining his medical opinion and/or was deposed on his medical opinion as to the cause of Rowan's death.

In the 1994 order, ALJ Robert S. Amery credited the testimony of the doctors who concluded that pneumoconiosis substantially contributed to Rowan's death. He stated:

> While there are an equal number of experts on both sides, I am more persuaded by the evidence in favor of the Claimant because: (1) Dr. Franyutti was the one who performed the autopsy and was in the best position to make a judgment, while none of the Employer's doctors saw the miner after he died, and (2) Dr. Gaziano was hired by the District Director to make an evaluation and not by either the Claimant or the Employer, so he has a more impartial status. Both Drs. Franyutti and Gaziano believed that pneumoconiosis contributed to the miner's death. Moreover, in considering this issue, I am mindful of the miner's many years of coal mine employment. Under these circumstances, I find that the Claimant has established that pneumoconiosis was a sub-

---

[3]Dr. Franyutti was the autopsy prosector.

stantially contributing cause or factor leading to the miner's death within the meaning of Section 718.205(c).

J.A. 225. The ALJ then ordered BethEnergy to pay Claimant's benefits.

BethEnergy appealed the ALJ's decision to the Board, and the Board affirmed the ALJ's finding. BethEnergy next filed a petition for review with this Court. We granted the petition, and in an unpublished opinion, vacated the Board's decision with instructions to remand the case to the ALJ. We found that:

> [T]he ALJ had no basis for concluding that Dr. Franyutti's microscopic examination was superior to the opinions of Drs. Kleinerman, Bush, and Hutchins. The ALJ also did not provide an *adequate rationale* for concluding that Dr. Franyutti's opportunity to conduct a gross examination rendered his opinion superior to the opinions of Drs. Kleinerman, Bush, and Hutchins, who only conducted microscopic examinations.

*Bethenergy Mines, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 92 F.3d 1176, 1996 WL 423126, at *3 (4th Cir. 1996) (emphasis added). We therefore held that "because the ALJ did not evaluate or sufficiently explain the weight accorded the relevant evidence, the case must be remanded to the ALJ for further proceedings." *Id.* at *4.

The Board remanded the case to the ALJ,[4] who, like the first ALJ, found that "better reasoned medical opinion evidence establishes that the miner's pneumoconiosis substantially contributed to [Rowan's] death, as provided by § 718.205(c)(2)," J.A. 246, and ordered BethEnergy to pay Claimant survivor's benefits. BethEnergy again appealed the ALJ's decision to the Board. The Board found that the ALJ failed to adequately explain why he accepted the opinions of Drs. Rasmussen, Doyle, and Harron. It vacated the ALJ's finding and once more remanded the case for reconsideration.

---

[4]On remand, the case was assigned to a different ALJ, Thomas M. Burke.

On a third remand, ALJ Burke found that Rowan's death was caused or significantly contributed to by the admittedly present pneumoconiosis. ALJ Burke concluded that this determination could be based on either (1) the extent of the pneumoconiosis throughout Rowan's lungs, or (2) the fact that Rowan's emphysema was caused in part by coal dust exposure. He ordered BethEnergy to pay Claimant survivor's benefits, and BethEnergy again appealed the ALJ's decision to the Board. The Board affirmed on both grounds. BethEnergy filed its second petition for review, which is now pending before this Court.[5]

## II.

In black lung cases, we review a claim under the Act to determine whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and the ALJ are rational and consistent with applicable law. *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000). "Substantial evidence consists of sufficient relevant evidence to convince a reasonable mind that the evidence is adequate to support a conclusion." *Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002); *see Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). Therefore, "we must affirm the Board if it properly determined that the ALJ's findings are supported by substantial evidence." *Doss v. Director, Office of Workers' Compensation Programs*, 53 F.3d 654, 659 (4th Cir. 1995).

## III.

BethEnergy asserts that the ALJ erred (1) in weighing the doctors' opinions regarding the amount of pneumoconiosis in Rowan's lungs, and (2) in finding that Rowan's centrilobular emphysema[6] was caused by coal dust exposure. Regarding the first alleged error, the ALJ, in determining that the evidence supported a finding of diffuse and moderate pneumoconiosis, again credited Dr. Franyutti. The ALJ detailed

---

[5]Claimant and the Director of the Office of Workers' Compensation Programs, United States Department of Labor, are respondents in this case.

[6]Centrilobular emphysema is a type of pulmonary emphysema and COPD. *See* J.A. 262.

the opinions of each doctor, and explained that Dr. Franyutti had the "superior opportunity" to observe the lung tissue because he "performed the autopsy, prepared the slides, and observed the lung tissue in total." J.A. 262. We need not resolve this issue because even assuming that the evidence was insufficient to support the finding that the pneumoconiosis in Rowan's lung tissue was of such a level to have played a role in his death, the ALJ's finding that Rowan's emphysema was caused in part by coal dust is sufficient to award survivor benefits here.

For an ALJ to award survivor benefits, competent medical evidence must establish that the miner's death was either due to pneumoconiosis or pneumoconiosis hastened the miner's death in any way. 20 C.F.R. § 718.205(c)(1)-(2) (1992). *See Clinchfield Coal Co. v. Fuller*, 180 F.3d 622, 623 (4th Cir. 1999). This burden is met where the miner (1) had pneumoconiosis,[7] (2) the pneumoconiosis arose from coal dust exposure, (3) the coal dust exposure was caused by coal mine employment, and (4) the pneumoconiosis hastened death in any way. 20 C.F.R. §§ 718.201, 718.203(b), 718.205(c)(2) (1992); *Shuff v. Cedar Coal Co.*, 967 F.2d 977, 979-80 (4th Cir. 1992).

In this case, it is undisputed that (1) Rowan had at least *minimal* simple pneumoconiosis, (2) he had centrilobular emphysema, a type of COPD, *See Warth v. Southern Ohio Coal Co.*, 60 F.3d 173, 175

---

[7]In 1992, pneumoconiosis was defined as:

> [A] chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes but is not limited to coal workers' pneumoconiosis . . . . For purposes of this definition, *a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to or substantially aggravated by, dust exposure in coal mine employment.*

20 C.F.R. § 718.201 (1992) (emphasis added). Claimant asserts that the Court should apply the 2001 version of 20 C.F.R. § 718.201, which includes COPD in its definition of pneumoconiosis, as opposed to the 1992 version, which does not. We apply the language of the 1992 version, which encompassed COPD within the definition. *See Warth v. Southern Ohio Coal Co.*, 60 F.3d 173, 175 (4th Cir. 1995).

(4th Cir. 1995) (holding that COPD is encompassed within the defini-
tion of pneumoconiosis), (3) COPD was a substantial contributor to
Rowan's death, and (4) Rowan worked in the mines for at least 24 years.[8]
Thus, the only question in dispute is whether Rowan's centrilobular
emphysema was caused by coal dust exposure.

BethEnergy asserts that the ALJ improperly accorded the most
weight to Dr. Rasmussen, who opined that minimal simple pneumo-
coniosis with coal mine dust exposure is sufficient to cause centrilo-
bular emphysema. It proffers the medical opinions of Drs. Renn,
Kleinerman, Fino, Hutchins, and Bush, who opined that coal dust
exposure does not cause centrilobular emphysema.

The ALJ explained that he found Dr. Rasmussen's testimony most
persuasive because Dr. Rasmussen offered extensive research to sup-
port his opinion. Dr. Rasmussen cited seven articles from medical
journals and six epidemiologic studies to support his position. J.A.
260. No other doctor offered such extensive research.

In his opinion, ALJ Burke offered concrete reasons for discounting
the opinions of the other doctors who were critical of Dr. Rasmussen.
He noted that Dr. Renn's testimony lacked the "definitiveness to out-
weigh the better reasoned and better supported report of Dr. Rasmus-
sen." J.A. 263. Dr. Kleinerman's disagreement with the medical
experts Dr. Rasmussen cited, were "in the most general of terms." Dr.
Kleinerman did not "critique any particular study or any specific data
behind a study." *Id.*

Furthermore, the ALJ found that Dr. Fino's criticisms of studies
cited by Dr. Rasmussen are "insufficient to dismiss the studies that
support Dr. Rasmussen's opinion," *id.*, because while Dr. Fino dis-
puted the "underlying data" of studies offered by Dr. Rasmussen, he

---

[8]If a miner has pneumoconiosis, it is a rebuttable presumption that the
pneumoconiosis arose from coal mine employment if the miner worked
in coal mines for 10 years or more. 20 C.F.R. § 178.203(b)(1992). In this
case, it is uncontradicted that Rowan worked in coal mines for at least
24 years. Therefore, the ALJ properly presumed that Rowan's pneumo-
coniosis arose out his mine employment.

did not specify which studies of Dr. Ruckley had evidentiary problems.[9] J.A. 264. Further, the ALJ stated that, "Dr. Fino doesn't contend that Dr. Rasmussen is incorrect in his interpretation of a study . . . supporting the relationship between coal dust exposure and centrilobular emphysema." *Id.* While Dr. Fino discussed a more recent study that purported to support his position, he did not "identify the study by title or author." *Id.* The ALJ added:

> More importantly [Fino's] characterization of the proposition for which the [more recent] study stands, that is, it distinguishes the centrilobular emphysema from smoking from the focal emphysema arising out of coal mine inhalation, is not inconsistent with Dr. Rasmussen's opinion that centrilobular emphysema can also be caused or aggravated by coal dust.

*Id.* The ALJ also credited Rasmussen's opinion over the opinions of Drs. Hutchins and Bush because their opinions were not as well supported or documented as Dr. Rasmussen's. He explained that Dr. Hutchins and Bush's reports did not even indicate an awareness of the studies referenced by Dr. Rasmussen.

We find that the ALJ gave specific and sufficient reasons for crediting Dr. Rasmussen's opinion, and substantial evidence supports the ALJ's finding that Rowan's coal dust exposure caused his centrilobular emphysema. We therefore conclude that the ALJ did not err in determining that coal dust exposure was a substantially contributing cause of Rowan's death.

IV.

Accordingly, the opinion of the Board is affirmed.

*AFFIRMED*

---

[9]Dr. Rasmussen cited two articles that Dr. Ruckley wrote on emphysema and coal dust exposure.